

**U.S. Department
of Transportation**

**Federal Motor Carrier
Safety Administration**

**1200 New Jersey Ave, S.E.
Washington, D.C. 20590**

April 16, 2026

<u>Via Electronic Mail and UPS</u>
The Honorable Kathy Hochul
Governor of New York State
NYS State Capitol Building
Albany, NY 12224

Mark J.F. Schroeder, Commissioner
New York Department of Motor Vehicles
6 Empire State Plaza
Albany, NY 12220

### NOTICE OF FINAL DETERMINATION OF SUBSTANTIAL NONCOMPLIANCE

Dear Governor Hochul and Commissioner Schroeder:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) served the State of New York a Preliminary Determination of Noncompliance (Preliminary Determination) in accordance with 49 CFR § 384.307(b) on December 12, 2025. The Preliminary Determination proposed a finding that New York Department of Motor Vehicles' (DMV) commercial driver's license (CDL) program has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled commercial learner's permits (CLPs) and CDLs set forth in 49 CFR § 384.212.[1] FMCSA reviewed New York's response to the Preliminary Determination (January Response), which it submitted on January 9, 2026, contesting the basis for the Preliminary Determination of noncompliance. FMCSA also convened an informal conference on February 10, 2026 with Commissioner Schroeder and other DMV representatives to provide New York an opportunity to inform FMCSA of its implemented

---

[1] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 10, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, that administratively stayed the IFR. On February 13, 2026, FMCSA published a Final Rule (91 Fed. Reg. 7044 (Feb. 13, 2026)) under the same title as the IFR. The effective date of the Final Rule was March 16, 2026. Because the transactions detailed in the Preliminary Determination occurred prior to publication of the IFR, the regulations cited in this letter reflect the pre-IFR text of parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which was in effect prior to September 19, 2025, and between November 10, 2025 and the March 16, 2026 effective date of the Final Rule.

or planned corrective actions, as well as present or discuss any other information for FMCSA's consideration.

On March 13, 2026, FMCSA sent New York a letter addressing the issues raised in New York's Response (March 2026 Letter), reiterating that DMV's failure to complete the required corrective actions as set forth in the Preliminary Determination, including immediate rescission of all noncompliant non-domiciled CLPs and CDLs, would result in FMCSA issuing a Final Determination of Substantial Noncompliance.[2] New York submitted a response to FMCSA's March 2026 Letter (March Response) on March 23, 2026, which stated that New York continues to dispute the legal and procedural merits of FMCSA's determination of noncompliance. New York asserted that the determination is without merit and stated that it declined to take corrective action.

After considering New York's responses and its refusal to correct any of the deficiencies noted in the Preliminary Determination, FMCSA issues this Final Determination of Substantial Noncompliance with the standards for issuing non-domiciled CLPs and CDLs set forth in 49 CFR § 384.212(a). FMCSA rejects New York's legal and procedural arguments used to justify its noncompliance with 49 CFR parts 383 and 384. FMCSA makes this Final Determination of Substantial Noncompliance in accordance with 49 CFR §§ 384.307(d) and 384.309(a)(2). Accordingly, pursuant to 49 U.S.C. § 31314(c)(1) and 49 CFR § 384.401(a), FMCSA is withholding four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to New York under 23 U.S.C. §§ 104(b)(1) and (2), which totals approximately $73,502,543.[3,4]

## I. Background[5]

FMCSA initiated an Annual Program Review (APR) of DMV's CDL program in July 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. As set forth in the Preliminary Determination, FMCSA found that more than 50 percent of the 200 non-domiciled driver records sampled during the 2025 APR failed to comply with requirements in 49 CFR parts 383 and 384. The Preliminary Determination cited 101 of the driver records sampled that showed that DMV issued a non-domiciled CDL for a period of validity that exceeded the driver's lawful presence documents. The Preliminary Determination also cited six of the driver records sampled that appeared to show that DMV issued non-domiciled CDLs to drivers without first validating the driver's lawful presence.

FMCSA found that the repeated errors discovered during the 2025 APR evinced an unacceptable deviation from FMCSA's regulations when issuing non-domiciled CLPs and CDLs and indicated

---

[2] The Agency's December 12, 2025 Preliminary Determination and the March 2026 Letter are incorporated by reference into this Final Determination of Substantial Noncompliance.

[3] FMCSA calculates this amount based on FY 2026 funding levels.

[4] 49 U.S.C. § 31314(d), 49 CFR § 384.403.

[5] The relevant statutory and regulatory authorities are set forth in the Preliminary Determination and March 2026 Letter and are not repeated in this Final Determination of Substantial Noncompliance.

2

a systemic breakdown in DMV's issuance process for non-domiciled CLPs and CDLs. Accordingly, as set forth in the Preliminary Determination, FMCSA determined that DMV must take the following corrective actions:

- Immediately pause the issuance of all new, renewed, transferred, or upgraded non-domiciled CLPs and CDLs until FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with 49 CFR parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in the issuance of non-domiciled CLPs and CDLs that did not meet the standards of 49 CFR parts 383 and 384 (the scope of the audit should not be limited to the issues identified in the Preliminary Determination);
- As part of the internal audit, review all supporting documentation for all new, renewed, transferred, or upgraded non-domiciled CLP and CDL transactions to ensure compliance with 49 CFR parts 383 and 384;
- Provide FMCSA a copy of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in the State's internal audit and in the Preliminary Determination;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with 49 CFR parts 383 and 384, as those regulations are in effect at the time of reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State has voided or rescinded all unexpired noncompliant non-domiciled CLPs and CDLs and reissued the licenses in accordance with 49 CFR parts 383 and 384, as in effect at the time of reissuance, and the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of 49 CFR subpart B of part 384 and 49 U.S.C. § 31311, and FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented.

In New York's January Response, it asserted that DMV issued non-domiciled CDLs and CLPs in substantial compliance with all Federal requirements. New York did not dispute the 101 transactions where DMV issued non-domiciled CLPs and CDLs that exceeded the expiration dates of the drivers' lawful presence documents presented during their transactions. Rather, it argued that FMCSA's claim that the DMV failed to meet the standards for issuing non-domiciled CLPs and CDLs "seems unsupported" because Federal law did not prohibit CLP or CDL expiration dates that extend beyond an initial term of lawful presence, in text or administrative practice. New York further argued that FMCSA's interpretation appears to contradict its longstanding application of Federal regulations, and it noted that FMCSA issued an IFR to add the requirement for States to issue non-domiciled CLPs and CDLs with expiration dates that do not exceed the expiration dates of the driver's lawful presence documents.

3

The Agency's March 2026 Letter reiterated the basis for the Agency's issuance of the Preliminary Determination: DMV did not demonstrate substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. The Agency explained that the regulatory universe of non-domiciled CLPs and CDLs is premised on the basic notion that a non-domiciled driver's commercial motor vehicle driving privileges cannot extend beyond that driver's lawful presence in the United States. As the Agency previously explained, regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence documents. In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, DMV was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies, including New York's DMV, were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents. However, the 2025 APR uncovered that DMV made no effort to ensure the expiration date of non-domiciled CDLs that were *not* REAL ID compliant did not exceed the date of the drivers' lawful presence documents. As noted in the Preliminary Determination, DMV staff admitted that, during issuance transactions involving non-domiciled CDLs that are not REAL ID compliant, DMV's electronic records system, Common Portal to Search Services (COMPASS), defaults to an expiration date that is 8 years from the date of initial issuance irrespective of when the drivers' lawful presence documents expire. Consequently, there are likely thousands of drivers who hold a DMV-issued non-domiciled CDL that will remain valid long after their lawful presence documents are no longer valid. New York's systemic noncompliance in this regard is made even more egregious by the State's refusal to take any corrective action to address it, as discussed in Section II below.

In addition to the 101 transactions addressed above, the Preliminary Determination also found that New York failed to provide evidence to demonstrate that DMV verified the drivers' lawful presence for six additional drivers. The Preliminary Determination explained that DMV failed to demonstrate it verified the drivers' lawful presence with an employment authorization document (EAD) or unexpired foreign passport and Form I-94 documenting the drivers' most recent admittance into the United States, as required under FMCSA's regulations in effect at the time the transactions occurred. In its January Response, New York disputed the six violations, submitting documents in support. After FMCSA reviewed New York's documents, FMCSA's March letter acknowledged that the lawful presence documents provided with its January 2026 Response appear to support DMV's assertions that it verified the drivers' lawful presence in accordance with parts 383 and 384 for five of the six transactions. However, as FMCSA noted, New York's supporting documentation also showed that for those five transactions, it issued non-domiciled CDLs that exceeded the drivers' lawful presence and therefore violated parts 383 and 384. The lawful presence documentation New York submitted to dispute the Preliminary Determination as to the sixth transaction, which involved driver "MJ," lacked sufficient clarity to rebut the determination of noncompliance.

4

Under 49 CFR § 384.301, a State must meet "each and every standard" of part 384, Subpart B to be in substantial compliance with 49 U.S.C. § 31311(a). The evidence clearly indicates that DMV failed to comply with 49 CFR § 384.212 because it issued non-domiciled CDLs and CLPs that exceeded the expiration dates of the drivers' lawful presence documents presented at the time the transactions occurred. Moreover, FMCSA's determination that the transaction involving driver "MJ" failed to comply with parts 383 and 384 remains unrebutted.

## II. New York's March Response

New York continues to dispute the legal and procedural merits of FMCSA's Preliminary Determination. New York reiterated its assertion that it strictly adhered to the Federal requirements in a manner consistent with FMCSA's own longstanding interpretation and administrative oversight in practice. New York argues that FMCSA's February 13, 2026 final rule cannot impact the lawfulness of DMV's past practices that occurred before the final rule's effective date. New York also argues that FMCSA has conducted several annual reviews of New York's CDL program and has never found DMV to be noncompliant with its Federal obligations for issuing non-domiciled CDLs and CLPs, or otherwise.

New York's arguments are without merit. States must require proof of lawful presence, in the form of an unexpired EAD or foreign passport, and must ensure the expiration date of the CLP or CDL does not exceed the expiration date stated on the driver's lawful presence documents. This is not a new requirement. FMCSA previously addressed New York's arguments in the Preliminary Determination and in the March 2026 Letter and reaffirms the Agency's positions set forth therein. Furthermore, under 49 U.S.C. § 31311 and 49 CFR § 384.307, FMCSA is authorized to evaluate all aspects of the State's CDL program. During the 2025 APR of each State, FMCSA conducted a thorough review of each State's nondomiciled CLP and CDL issuance practices as a part of the overall APR. As set forth in the Preliminary Determination and the March 2026 Letter, FMCSA found that DMV substantially failed to comply with 49 CFR parts 383 and 384 in issuing non-domiciled CLPs and CDLs. The Agency's focus on other aspects of a State's CDL program in previous years does not preclude the Agency from assessing a State's compliance with the requirements of 49 CFR parts 383 and 384 in the current year's APR and all future APRs. New York's assertion that prior clean APRs act as a safeguard against compliance standards subverts the safety purpose of the CDL program and the Agency's oversight responsibility. The Agency cannot be estopped from enforcing safety regulations—nor are Federal standards waived—simply because a State's noncompliant practice went undetected in prior sample sets. Accordingly, DMV is required to implement corrective actions to address the deficiencies identified in the Preliminary Determination and the March 2026 Letter irrespective of how long DMV's noncompliant nondomiciled CLP and CDL issuance practices have existed.

New York also argued that FMCSA ignores that, for a CDL holder to renew their credential under DMV's procedures, they would be required to again show valid lawful presence to complete the renewal transaction. New York averred that FMCSA assumes that DMV accepts an unexpired EAD to demonstrate valid lawful presence and treats that document as if it were valid in perpetuity. Again, New York is mistaken. As previously stated, under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the

5

time that the transactions detailed in the Preliminary Determination occurred provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired EAD issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States.[6] In addition, State procedures for issuing, *renewing,* or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[7] Thus, FMCSA did not assume that DMV would treat an EAD as valid in perpetuity; DMV is required to review a driver's lawful presence documents at the time of each transaction, including when the driver renews a CDL.

New York further argued that FMCSA's threat to withhold Federal funding unless it takes immediate, specific action is arbitrary and capricious. New York's argument is misinformed and contradicts the factual record. DMV is well aware of its obligations under 49 CFR § 384.307(c) that its corrective action must be adequate to correct the deficiencies noted in the Preliminary Determination and must be implemented on a schedule mutually agreed upon by FMCSA and DMV. This is not a one-way street. While the Agency identified corrective action that should be taken immediately, the Agency understands that delays may occur, and specifically informed DMV that its corrective action implementation schedule may account for any administrative due process actions required under State law. The Agency also informed New York that it remains committed to working with DMV officials and stands ready to assist the State to ensure its substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. However, rather than implementing corrective action on a mutually agreed upon schedule, New York issued a blanket refusal to take any corrective action. The Agency cannot mutually agree to a schedule with a State that refuses to acknowledge its deficiencies or act to correct them.

The Agency informed New York of the consequences of its noncompliance, explaining that 49 CFR part 384, Subpart B sets forth the minimum standards to which States must adhere to be deemed in substantial compliance. In this regard, under 49 CFR § 384.301, a State must meet "each and every standard" of part 384, Subpart B to be in substantial compliance with 49 U.S.C. § 31311(a). As noted in the Notice of Proposed Rulemaking proposing the standards for State compliance with the CDL program, "[FMCSA] would not agree that a State meets the standard for a given transaction if it successfully accomplishes the transaction only a given portion of the time, for example 80 percent. Rather, any departure from the minimum standard, together with evidence that the State does not have in place such procedures and internal controls as would offer reasonable assurance of comprehensive adherence, would be cause for a determination that the State is not meeting the standard and is not in substantial compliance."[8] At that point, FMCSA is authorized to direct the withholding of a percentage of a State's Federal-aid highway funds, as specified in 49 U.S.C. § 31314. As required by 49 CFR § 384.401(a), the Federal-aid highway funds "shall be withheld" from a noncompliant State. A State's failure to comply with *any* standard in Subpart B is a basis for determining the State is in substantial noncompliance.[9]

---

[6] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212(b).

[7] *Id*. at § 383.73(f)(2) (emphasis added).

[8] 58 FR 34344, 34345 (Jun. 24, 1993).

[9] 49 CFR § 384.301.

In this case, the evidence clearly indicates that New York failed to comply with 49 CFR § 384.212 because it issued non-domiciled CDLs and CLPs that exceeded the expiration dates of the drivers' lawful presence documents presented at the time of the transactions. Notably, this occurred in more than 50 percent of the driver records sampled. Under 49 CFR § 384.301, New York's pervasive failure in this regard is more than sufficient to show the State is in substantial noncompliance, rendering FMCSA's determination firmly supported by the factual record and hardly arbitrary or capricious.

As New York acknowledges in its March Response, New York has approximately 25,000 non-domiciled licensees who work in industries ranging from commercial trucking to sanitation to school transportation. However, because DMV mistakenly believes that the Preliminary Determination is without merit, it refuses to even identify the drivers with noncompliant CLPs and CDLs and take corrective action. Again, there are likely thousands of drivers who continue to hold noncompliant New York-issued non-domiciled CLPs or CDLs currently operating throughout New York and this country. This is unacceptable and a significant safety risk.

### III. Withholding of Funds Based on Noncompliance

FMCSA determines that New York has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs set forth in 49 CFR § 384.212. Accordingly, pursuant to 49 U.S.C. § 31314(c)(1) and 49 CFR § 384.401(a), FMCSA is withholding four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to New York under 23 U.S.C. §§ 104(b)(1) and (2), which totals approximately $73,502,543. Under 49 U.S.C. § 31314(d) and 49 CFR § 384.403, funds withheld following a substantial noncompliance determination are no longer available for apportionment to New York. Further, DMV may also be subject to decertification of its CDL program in accordance with 49 U.S.C. § 31312 and 49 CFR § 384.405.

If DMV persists in substantial noncompliance with the standards set forth in 49 CFR §§ 384.212 and 384.225 in subsequent years, FMCSA may withhold up to eight percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2028 that would otherwise be apportioned to New York under 23 U.S.C. §§ 104(b)(1) and (2), which totals approximately $147,005,086.[10]

### IV. Conclusion

FMCSA is deeply disappointed by DMV's refusal to take the necessary corrective actions set forth in the Preliminary Determination. The withholding of Federal funds is the direct and necessary consequence of New York's own actions and its demonstrated disregard for Federal safety standards. The Agency remains committed to working with DMV officials to bring New York's CDL program into substantial compliance to ensure that further withholding of funds or decertification of New York's CDL program is unnecessary.

---

[10] FMCSA calculates this amount based on FY 2026 funding levels.

Please direct all questions regarding this Notice to Philip Thomas, Acting Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator