# 26-1097

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

STATE OF NEW YORK, NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES, *Petitioners*,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, SEAN DUFFY, in his official capacity as Secretary of the Department of Transportation, FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, DEREK BARRS, in his official capacity as Administrator of the Federal Motor Carrier Safety Administration, *Respondents*.

On Petition for Review of a Final Determination of
the Federal Motor Carrier Safety Administration

**BRIEF OF AMICI CURIAE AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AMERICAN FEDERATION OF TEACHERS, AMERICAN FEDERATION OF LABOR & CONGRESS OF INDUSTRIAL ORGANIZATIONS, TRANSPORT WORKERS UNION OF GREATER NEW YORK, LOCAL 100, AND LABORERS' INTERNATIONAL UNION OF NORTH AMERICA IN SUPPORT OF PETITIONERS**

Wendy Liu
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

July 13, 2026                    *Attorneys for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................ii

INTEREST OF AMICI CURIAE..........................................................1

ARGUMENT ..................................................................................4

I.  FMCSA's decision to find New York in substantial noncompliance was arbitrary and capricious. ......................................................5

II. FMCSA's decision to withhold $73.5 million in federal funding from New York was arbitrary and capricious. ............................10

CONCLUSION ..............................................................................21

CERTIFICATE OF COMPLIANCE....................................................22

CERTIFICATE OF SERVICE............................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Caring Hearts Personal Home Servs., Inc. v. Burwell,*
  824 F.3d 968 (10th Cir. 2016)......................................................................9

*Cigar Ass'n of America v. FDA,*
  132 F.4th 535 (D.C. Cir. 2025)......................................................................9

*Department of Commerce v. New York,*
  588 U.S. 752 (2019)......................................................................11

*Encino Motorcars, LLC v. Navarro,*
  579 U.S. 211 (2016)......................................................................16, 20

*FCC v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009)......................................................................16

*Kakar v. USCIS,*
  29 F.4th 129 (2d Cir. 2022)......................................................................16

*SEC v. Chenery Corp.,*
  318 U.S. 80 (1943)......................................................................9

*Spirit Airlines, Inc. v. Department of Transportation,*
  997 F.3d 1247 (D.C. Cir. 2021)......................................................................11

*United States v. International Brotherhood of Teamsters,*
  170 F.3d 136 (2d Cir. 1999)......................................................................9

**Statutes, Regulations, and Other Regulatory Materials**

49 U.S.C. § 31311(a)......................................................................6

6 C.F.R. § 37.21(b)......................................................................7

ii

49 C.F.R. § 383.71(f) ................................................................6, 11

49 C.F.R. § 383.73(b) .................................................................5, 7

49 C.F.R. § 383.73(f) ......................................................... 6, 7, 8, 12

49 C.F.R. § 384.101 ........................................................................6

49 C.F.R. § 384.212 ........................................................................6

49 C.F.R. §§ 384.201–384.236 .......................................................6

49 C.F.R. § 384.401 ......................................................................10

49 C.F.R. pt. 384, subpt. B ............................................................6

Minimum Standards for Drivers Licenses and Identification Cards
  Acceptable by Federal Agencies for Official Purposes,
  73 Fed. Reg. 5272 (Jan. 29, 2008).............................................7

Restoring Integrity to the Issuance of Non-Domiciled Commercial
  Drivers Licenses (CDL),
  91 Fed. Reg. 7044 (Feb. 13, 2026).........................................18

**Other Authorities**

American Society of Civil Engineers, *A Comprehensive Assessment of
  America's Infrastructure: 2025 Report Card for America's
  Infrastructure* 159, https://infrastructurereportcard.org/wp-
  content/uploads/2025/03/Full-Report-2025-Natl-IRC-WEB.pdf..........15

Emily Barnes, *Why CDL stoppage could lead to even worse bus driver
  shortage in NY*, Press Connects (Feb. 25, 2026),
  https://www.pressconnects.com/story/news/2026/02/25/new-dmv-
  limitations-may-lead-to-even-worse-bus-driver-shortage-in-
  ny/88854549007/ ................................................................20

Alfonso A. Castillo & Darwin Yanes, *School bus driver shortage to
  worsen with end of immigrant licensing program, operators say,*

Newsday (Mar. 9, 2026), https://www.newsday.com/long-
island/transportation/cdl-immigrant-driver-licenses-hwjomjkn ........20

Brendan Chen, *How Students' Transportation Options—or Lack
Thereof—Affect Educational and Health Outcomes*, Urban Inst.
Initiative (Apr. 26, 2023), https://archive-
housingmatters.urban.org/articles/how-students-transportation-
options-or-lack-thereof-affect-educational-and-health-outcomes........19

Federal Highway Administration, *How Do Weather Events Affect
Roads?*, https://ops.fhwa.dot.gov/weather/roadimpact.htm (last
modified July 15, 2025)...................................................................15

Federal Highway Administration, *National Highway Performance
Program*, Federal-aid Programs and Special Funding,
https://www.fhwa.dot.gov/specialfunding/nhpp/ (last updated June 22,
2026).............................................................................................12

Federal Highway Administration, *The Safety and Roadway
Maintenance Link*, FHWA-SA-14-091,
https://highways.dot.gov/safety/other/safety-and-roadway-
maintenance-link (last modified Nov. 21, 2014) .................................13

Federal Highway Administration, *Surface Transportation Block Grant
Program (STBG)*, Federal-aid Programs and Special Funding,
https://www.fhwa.dot.gov/specialfunding/stp/ (last updated June 22,
2026).............................................................................................12

Federal Highway Administration, *Unpaved Roads: Safety Needs and
Treatments*, FHWA-SA-14-094,
https://highways.dot.gov/safety/other/unpaved-roads-safety-needs-and-
treatments (last modified June 2, 2016) ...........................................14

Federal Motor Carrier Safety Administration, *Crash Statistics*,
https://ai.fmcsa.dot.gov/crashstatistics/CMV/CrashRate?state= ........11

Jessica Gould et al., *Immigrant New Yorkers denied commercial driver
licenses following Trump funding threat*, Gothamist (Feb. 19, 2026),

iv

https://gothamist.com/news/immigrant-new-yorkers-denied-commercial-driver-licenses-following-trump-funding-threat. .............20

Sebastian Martinez Hickey et al., *The school bus driver shortage remains severe, and bus driver pay is getting worse*, Econ. Pol'y Inst. (Nov. 14, 2026) ....................................................................................19

Corey James et al., *DOT worker struck by vehicle dies, CSEA union says*, Spectrum News (May 30, 2025), https://spectrumlocalnews.com/nys/central-ny/news/2025/05/29/state-police--dot-worker-struck-by-vehicle--airlifted-to-albany-hospital......17

Howard K. Mell et al., *Emergency Medical Services Response Times in Rural, Suburban, and Urban Areas*, 152 JAMA Surgery, no. 10, 2017, https://pmc.ncbi.nlm.nih.gov/articles/PMC5831456/ ...........................15

National Transportation Research Group*, Key facts about New York's surface transportation system* (Apr. 2026), https://tripnet.org/wp-content/uploads/2020/04/TRIP_Fact_Sheet_NY.pdf.............................13

New York Attorney General, Press Release, *Attorney General James and Governor Hochul Sue to Restore $73 Million in Federal Highway Funds for New York* (Apr. 24, 2026), https://ag.ny.gov/press-release/2026/attorney-general-james-and-governor-hochul-sue-restore-73-million-federal....................................................................14

New York Department of Transportation, Office of Transportation Maintenance, https://www.dot.ny.gov/divisions/operating/oom/transportation-maintenance/transportation-maintenance-general .............................17

Safe Roads USA, *Understanding the Link Between Unsafe Road Conditions and Car Accidents* (Mar. 26, 2019), https://www.makeroadssafe.org/understanding-the-link-between-unsafe-road-conditions-and-car-accidents/ ..........................................14

United States Government Accountability Office, GAO-26-108599, *Disaster Assistance High-Risk Series: State and Local Response*

*Capabilities* (Dec. 18, 2025), https://www.gao.gov/assets/gao-26-108599.pdf ............................................................................... 15

United States Department of Transportation Volpe Center, *Transportation Emergency Management*, https://www.volpe.dot.gov/our-work/transportation-emergency-management ............................. 15

Jesse Zanger & Marcia Kramer, *Feds. Withholding $73 million in federal highway funds from New York. Here's why.*, CBS News, Apr. 16, 2026, https://www.cbsnews.com/newyork/news/feds-withhold-73m-in-federal-highway-funds/ ............................................................. 13

## INTEREST OF AMICI CURIAE[1]

Amici are labor unions that represent workers in New York, including drivers who need non-domiciled commercial driver's licenses (CDLs) to provide essential services to New York state, cities, and localities. These drivers include people who drive buses for school districts and public transit, dispose of wastewater and refuse in specialized vehicles, maintain and repair roadways and highways, and keep streets clean and safe with street sweepers and snowplows.

The American Federation of State, County, and Municipal Employees, AFL-CIO (AFSCME) is a national labor organization and unincorporated membership association headquartered in Washington, DC. AFSCME, through its affiliate local unions and councils, represents 1.4 million members across the United States, including thousands of members who need CDLs for their jobs. In New York, where hundreds of thousands of AFSCME members live and work in a wide range of industries, AFSCME members required to hold CDLs for their jobs

---

[1] This brief was not authored in whole or in part by counsel for any party, and no one other than amici curiae or their counsel made a monetary contribution to the preparation or submission of the brief. Counsel for all parties have consented to its filing.

include New York State Department of Transportation (NYSDOT) employees, who are responsible for helping to keep New York's roadways safe for the public. These members are represented by AFSCME affiliate the Civil Service Employees Association (CSEA). AFSCME's interest in this case thus runs the gamut from CDL holders themselves, to their fellow AFSCME-represented NYSDOT employees who work across the state everyday in service of public safety, to the many other AFSCME members in New York who rely on these services as residents.

The American Federation of Teachers, AFL-CIO (AFT) is a national labor union headquartered in Washington, DC. AFT's purpose is to promote fairness, democracy, economic opportunity, and high-quality public education, healthcare, and public services for students, their families, and the communities their members serve. AFT represents approximately 1.8 million members who work in every U.S. state, the District of Columbia, Puerto Rico, Guam, and the U.S. Virgin Islands. The AFT is affiliated with approximately 3,500 local unions throughout the United States. AFT, through its affiliates, represents approximately 13,500 workers in the U.S. transportation industry, including school bus drivers, maintenance drivers, civil engineers, and inspectors. Many of

2

these workers are required to hold a CDL as a condition of their employment. The AFT has over 700,000 members in the state of New York, many of whom work in school districts that rely on CDL-holding school bus drivers to provide a high quality public education to students.

The American Federation of Labor & Congress of Industrial Organizations (AFL-CIO) is a federation of 65 national and international labor organizations with a total membership of nearly 15 million working people. The AFL-CIO and its affiliated unions represent workers in New York State's transportation industry whose jobs and livelihoods are directly threatened by the Federal Motor Carrier Safety Administration's withholding of federal highway funds. Union members who work outside of the transportation sector in New York also will be affected by a loss of workers who ensure that they can get to work, that their kids can get to school, and that are critical to providing the goods and services they rely on for their livelihoods.

Transport Workers Union, Local 100 (TWU) is an industrial transportation union headquartered in Brooklyn, New York. Covering 44,000 members in the New York City transit system, private operations,

and school bus lines, Local 100 is the largest local union of the TWU, and the largest local transit union in North America.

The Laborers' International Union of North America (LIUNA) is a union of over 530,000 workers, including immigrants, who build and serve this country every day. LIUNA represents workers nationally whose jobs require a CDL to operate large, heavy, or hazardous vehicles. LIUNA was founded in 1903 by immigrant workers who believed that every worker that labors with dignity deserves fair treatment, safe conditions, and a voice on the job. That promise still guides LIUNA today.

Amici submit this brief in support of Petitioners because the challenged decision, if not set aside, will result in devastating harm to the drivers and workers that Amici represent.

## ARGUMENT

The Federal Motor Carrier Safety Administration (FMCSA) issued a final determination that New York was not in substantial compliance with federal minimum standards for issuing CDLs and, on that basis, decided to withhold from New York $73.5 million in federal transportation funds. These decisions were arbitrary and capricious. First, FMCSA's finding of substantial noncompliance rests on the

4

agency's assertion that New York should have adopted an interpretation of FMCSA regulations that was not stated in the regulations. Second, FMCSA's withholding of $73.5 million—the maximum penalty—was neither reasonable nor the product of reasoned decisionmaking.

## I. FMCSA's decision to find New York in substantial noncompliance was arbitrary and capricious.

FMCSA determined that New York did not substantially comply with federal regulations solely because New York had issued non-domiciled CDLs with expiration dates that did not match the expiration date on the driver's Employment Authorization Document (EAD)—the documentation presented to show that the driver is authorized to work in the United States. *See* A45.[2] FMCSA's determination that New York was not in substantial compliance with federal minimum standards is arbitrary and capricious.

To begin with, at the time of FMCSA's determination, federal law did not require the expiration date on a CDL to match the one on an

---

[2] Citations to "A___" are to the pages of the Appendix for Petitioners, Docket Entry No. 17.1.

EAD.[3] Pursuant to 49 U.S.C. § 31311(a), states were required to comply with 25 enumerated requirements "[t]o avoid having amounts withheld from apportionment." Federal regulations further specified 36 "minimum standards" for states to be in substantial compliance with the requirements of section 31311(a). 49 C.F.R. § 384.101(b)(1); *see* 49 C.F.R. pt. 384, subpt. B ("Minimum Standards for Substantial Compliance by States"). None of those statutory or regulatory requirements addressed expiration dates. *See* 49 U.S.C. §§ 31311(a)(1)–(25); 49 C.F.R. §§ 384.201–384.236.

FMCSA's contrary position cites the standard in 49 C.F.R. § 384.212(a):

> The State may issue CDLs or [commercial learner's permits (CLPs)] only to persons for whom the State is the State of domicile as defined in § 383.5 of this subchapter; except that the State may issue a Non-domiciled CLP or CDL under the conditions specified in §§ 383.23(b), 383.71(f), and 383.73(f) of this subchapter.

That provision, however, does not require any specific expiration date for a CDL or CLP. And the then-applicable regulations cited in that

---

[3] FMCSA revised its regulations on September 29, 2025. Citations in this brief are to the regulations in effect prior to September 29, 2025, unless otherwise noted.

provision did not expressly require matching expiration dates either. Rather, they required the procedures for non-domiciled CDLs to be "identical" to those for domiciled CDLs. *Id.* § 383.73(f)(2). And domiciled CDL procedures required states to "[m]ake the CDL valid for no more than 8 years from the date of issuance." *Id.* § 383.73(b)(9). No other regulations addressed expiration dates, let alone required the expiration date on a non-domiciled CDL to match the one on a driver's EAD.

Although the text of the regulation is clear, comparison to the regulations for REAL ID driver's licenses confirms the point: Those regulations have always included a matching expiration-date requirement. *See* 6 C.F.R. § 37.21(b)(1) ("States shall not issue a temporary or limited-term driver's license or identification card … [f]or a time period longer than the expiration of the applicant's authorized stay in the United States"). Although the REAL ID regulation has been in effect since 2008,[4] FMCSA did not incorporate a similar matching-date requirement in its CDL regulations. Further underscoring the absence of

---

[4] *See* Minimum Standards for Driver's Licenses and Identification Cards Acceptable by Federal Agencies for Official Purposes, 73 Fed. Reg. 5272, 5335 (Jan. 29, 2008).

such a requirement from the then-applicable regulations, FMCSA in 2026 promulgated regulations with an express matching-date requirement for non-domiciled CDLs. *See* 49 C.F.R. § 383.73(f)(2)(iv) (effective Mar. 16, 2026) ("For applicants domiciled in a foreign jurisdiction, the State must ensure that the period of validity of the non-domiciled CLP or CDL does not exceed the Admit Until Date or expiration date on the applicant's I-94/A or 1 year, whichever is sooner.").

Notwithstanding the plain text of the regulations, FMCSA asserts that "the regulatory universe … is premised on the basic notion" that CDL and EAD expiration dates should match because federal regulations required CDL applicants to present an "*unexpired*" EAD. A42 (emphasis in original). But FMCSA does not point to any language in the regulations stating a matching-date requirement and cannot point to any guidance or statements advising States of the interpretation it now articulates. A37. And although FMCSA had multiple opportunities to raise a concern with expiration dates in its prior audits of New York, FMCSA did not do so. Indeed, until the determination at issue, FMCSA had "*never* found [New York] to be noncompliant" with federal standards. A37. FMCSA's determination, then, rests on the agency's theory that

New York should be punished for failing to adopt a practice that was not stated in the regulations and that FMCSA did not announce before it faulted New York for failing to adopt it. *See also Cigar Ass'n of Am. v. FDA*, 132 F.4th 535, 540 (D.C. Cir. 2025) (stating that reliance "on a false factual premise … constitute[s] arbitrary agency action").

For these reasons, FMCSA's decision finding New York substantially noncompliant with federal minimum standards because New York did not adopt an interpretation that was not stated in the applicable regulations was arbitrary and capricious. *See Caring Hearts Pers. Home Servs., Inc. v. Burwell*, 824 F.3d 968, 977 (10th Cir. 2016) (Gorsuch, J.) (stating that "an agency decision that loses track of its own controlling regulations and applies the wrong rules in order to penalize private citizens can never stand"); *see also United States v. Int'l Bhd. of Teamsters*, 170 F.3d 136, 143 (2d Cir. 1999) (in reviewing an agency's imposition of sanctions under the Administrative Procedure Act arbitrary-and-capricious standard, stating that "[a]n order may not stand if the agency has misconceived the law" (quoting *SEC v. Chenery Corp.* 318 U.S. 80, 94 (1943)).

9

**II. FMCSA's decision to withhold $73.5 million in federal funding from New York was arbitrary and capricious.**

Based on its (erroneous) finding that New York was not in substantial compliance with federal minimum standards because it had not matched the expiration dates on CDLs to those on an applicant's EAD, FMCSA decided to withhold $73.5 million (or four percent) of federal transportation funds that otherwise would have been apportioned to New York for fiscal year 2027. *See* A45. That amount is the *maximum* penalty that FMCSA could impose following a final determination of substantial noncompliance. *See* 49 C.F.R. § 384.401(a) (providing that "[a]n amount *up to* 4 percent of the Federal-aid highway funds required to be apportioned … shall be withheld from a State" (emphasis added)). FMCSA's decision to withhold the maximum amount of federal funding was arbitrary and capricious for multiple reasons.

**A.** FMCSA provided no explanation for why withholding the maximum amount of federal funding was appropriate to address its purported expiration-date concern. FMCSA asserts that it is "unacceptable and a significant safety risk" for drivers to have CDLs with nonmatching expiration dates, A45, but the agency nowhere explained what expiration dates have to do with safety. FMCSA's assertion that

10

New York's "pervasive failure" in expiration dates translates to a safety issue, A45, is not supported by FMCSA's own statistics, which show that New York has one of the lowest fatal crash rates in the country.[5] And it ignores that all non-domiciled CDL drivers, before they are issued a license, must satisfy knowledge, skills, training, and testing standards showing that they can safely operate commercial motor vehicles. *See* 49 C.F.R. § 383.71(f)(2). FMCSA's decision to withhold $73.5 million because of a dispute about expiration dates thus reveals a "significant mismatch between the decision the [agency] made and the rationale [it] provided." *Dep't of Com. v. New York*, 588 U.S. 752, 783 (2019).

**B.** Additionally, "[a]n agency is required to consider responsible alternatives to its chosen policy and to give a reasoned explanation for its rejection of such alternatives." *Spirit Airlines, Inc. v. Dep't of Transp.*, 997 F.3d 1247, 1255 (D.C. Cir. 2021) (citation omitted). "This principle goes to the heart of reasoned decisionmaking; it is not limited to rulemaking." *Id.* Here, FMCSA did not explain its refusal to impose a less

---

[5] FMCSA, *Crash Statistics*, https://ai.fmcsa.dot.gov/crashstatistics/ CMV/CrashRate?state= (New York has a fatal crash rate of "0.105" per 100 million total vehicle miles traveled, placing it as the state with the 8th lowest fatal crash rate).

draconian penalty—for example, rather than withholding funding, directing New York to reissue existing non-domiciled CDLs with expiration dates that matched the period of authorized presence. Indeed, FMCSA recently issued a rule that contemplates issuing corrected non-domiciled CDLs that comply with the new requirements of the rule. *See* 49 C.F.R. § 383.73(f)(3)(ii) (effective Mar. 16, 2026). FMCSA's failure to consider an obvious and reasonable alternative to withholding the maximum amount of federal funding was arbitrary and capricious.

**C.** FMCSA also failed to consider the *harms* to safety from imposing that draconian penalty. The funds that FMCSA withheld were from programs "for the condition and performance of" national highways,[6] and "to preserve and improve the conditions and performance on" highways, bridges, tunnels, and other transportation infrastructure projects."[7] *See* A45. In particular, the substantial funds that FMCSA is now withholding

---

[6] Fed. Highway Admin., *Nat'l Highway Performance Program*, Federal-aid Programs and Special Funding, https://www.fhwa.dot.gov/specialfunding/nhpp/ (last updated June 22, 2026).

[7] Fed. Highway Admin., *Surface Transportation Block Grant Program (STBG)*, Federal-aid Programs and Special Funding, https://www.fhwa.dot.gov/specialfunding/stp/ (last updated June 22, 2026).

12

would have been used "for replacing, repairing, and maintaining bridges, culverts, and other essential components of highway infrastructure." Pets. Br. 41.

The loss of $73.5 million in federal funding impedes New York's ability to repair and maintain roads, bridges, and other transportation infrastructure, and thereby poses a significant threat to road safety. An April 2026 analysis reported that "[a] total of 45% of New York's major roads are in poor or mediocre condition," and that "[a] total of 10% of New York's bridges are rated in poor/structurally deficient condition, meaning there is significant deterioration to the major components of the bridge."[8] As the U.S. Department of Transportation's Federal Highway Administration has explained, "[w]ell-maintained roads are more likely to be safer roads."[9] Losing substantial funds means "less money to repave roads, upgrade aging infrastructure, and repair potholes,"[10] and less

---

[8] Nat'l Transp. Research Group, *Key facts about New York's surface transportation system* (Apr. 2026), https://tripnet.org/wp-content/uploads/2020/04/TRIP_Fact_Sheet_NY.pdf.

[9] *See* Fed. Highway Admin, *The Safety and Roadway Maintenance Link*, FHWA-SA-14-091, https://highways.dot.gov/safety/other/safety-and-roadway-maintenance-link (last modified Nov. 21, 2014).

[10] Jesse Zanger & Marcia Kramer, *Feds. Withholding $73 million in federal highway funds from New York. Here's why.*, CBS News, Apr.

money for "critical safety upgrades on [New York] roads."[11] Poorer road conditions thus increase the risk of fatal accidents and crashes. As one study found, "a lack of adequate roadway safety features … was likely a contributing factor in approximately one-third of all fatal traffic crashes" in 2024.[12]

Withholding $73.5 million also disrupts public services that are essential to public safety. Poor conditions on highways, roads, and bridges hinder essential workers from safely and timely responding to

---

16, 2026, https://www.cbsnews.com/newyork/news/feds-withhold-73m-in-federal-highway-funds/.

[11] Press Release, N.Y. Att'y Gen., *Attorney General James and Governor Hochul Sue to Restore $73 Million in Federal Highway Funds for New York* (Apr. 24, 2026), https://ag.ny.gov/press-release/2026/attorney-general-james-and-governor-hochul-sue-restore-73-million-federal (quoting New York Governor Kathy Hochul).

[12] Nat'l Transp. Research Group, *supra* n.8; *see also* Fed. Highway Admin., *Unpaved Roads: Safety Needs and Treatments*, FHWA-SA-14-094, https://highways.dot.gov/safety/other/unpaved-roads-safety-needs-and-treatments (last modified June 2, 2016) (stating that in some states, unpaved roadways "account for up to 20 percent of … fatalities"); *see also* Safe Roads USA, *Understanding the Link Between Unsafe Road Conditions and Car Accidents* (Mar. 26, 2019), https://www.makeroadssafe.org/understanding-the-link-between-unsafe-road-conditions-and-car-accidents/ ("Unsafe and dangerous road conditions contribute to a staggering number of car accidents every year.").

emergencies and natural disasters,[13] and delay people from timely evacuating disaster areas.[14] Hazardous conditions increase crash risk.[15] And delayed emergency response times because of poor road conditions increase the risk of worse outcomes for the people involved in the emergency.[16]

---

[13] *See* U.S. Gov't Accountability Off., GAO-26-108599, *Disaster Assistance High-Risk Series: State and Local Response Capabilities* 1, 2 n.7 (Dec. 18, 2025), https://www.gao.gov/assets/gao-26-108599.pdf (stating that "[r]responsibility for responding to a disaster generally begins at the state and local level," and identifying "critical transportation" as a needed state capability for disaster response); U.S. Dep't of Transp. Volpe Ctr., *Transportation Emergency Management*, https://www.volpe.dot.gov/our-work/transportation-emergency-management ("Transportation is a key component of emergency management, tying transportation emergency management into its resilient infrastructure and sustainability priorities."),

[14] *See* Am. Soc'y of Civil Engineers, *A Comprehensive Assessment of America's Infrastructure: 2025 Report Card for America's Infrastructure* 159, https://infrastructurereportcard.org/wp-content/uploads/2025/03/Full-Report-2025-Natl-IRC-WEB.pdf (stating that "state departments of transportation … need to ensure their existing infrastructure can support daily operations and facilitate the movement of people evacuating areas affected by extreme weather events").

[15] *See* Fed. Highway Admin., *How Do Weather Events Affect Roads?*, https://ops.fhwa.dot.gov/weather/roadimpact.htm (last modified July 15, 2025).

[16] *See* Howard K. Mell et al., *Emergency Medical Services Response Times in Rural, Suburban, and Urban Areas*, 152 JAMA Surgery, no. 10, 2017, https://pmc.ncbi.nlm.nih.gov/articles/PMC5831456/ ("Longer [emergency medical service] response times have been associated with worse outcomes in trauma patients.").

FMCSA did not address any of these safety harms from withholding $73.5 million in federal highway funding. Because the agency "entirely failed to consider an important aspect of the problem," its decision to impose that substantial penalty was arbitrary and capricious. *Kakar v. USCIS*, 29 F.4th 129, 132 (2d Cir. 2022) (citation omitted).

**D.** An agency must provide "a more detailed justification than what would suffice for a new policy created on a blank slate … when … its prior policy has engendered serious reliance interests that must be taken into account." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). "[A] reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy.'" *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (quoting *Fox Television Stations*, 556 U.S. at 515–16). Here, FMCSA's position that the expiration date on a non-domiciled CDL must match the expiration date on the driver's EAD departs from its prior position, which previously stated no such requirement. *See supra* pp.5–8.

FMCSA's withholding of highway funds will harm thousands of people employed by New York, including people represented by the amici unions. For example, members of amicus AFSCME's affiliate in New

16

York, the Civil Service Employees Association, include people employed in New York's Office of Transportation Maintenance, which works to provide snow and ice control and "preventative and corrective maintenance and general repairs to the State's highways, bridges," and other transportation infrastructure.[17] Funding cuts in that office will jeopardize the jobs of amici's members, threatening their ability to provide for their families and hold employer-provided benefits like health insurance. Moreover, by impeding highway safety, the withholding of funds exacerbates the safety risks for AFSCME members who continue to hold their jobs and already face perilous conditions in the course of their essential work maintaining and repairing state roads.[18]

Furthermore, imposing this penalty because New York did not take all the corrective actions that FMCSA sought in its preliminary determination, including voiding or rescinding thousands of unexpired

---

[17] N.Y. Dep't of Transp., Off. of Transp. Maintenance, https://www.dot.ny.gov/divisions/operating/oom/transportation-maintenance/transportation-maintenance-general.

[18] *See, e.g.*, Corey James et al., *DOT worker struck by vehicle dies, CSEA union says*, Spectrum News (May 30, 2025), https://spectrumlocalnews.com/nys/central-ny/news/2025/05/29/state-police--dot-worker-struck-by-vehicle--airlifted-to-albany-hospital.

CDLs,[19] was unreasonable, because cancelling licenses would have caused substantial harm to drivers, local governments, and communities throughout the state. Approximately 32,600 drivers in New York have non-domiciled CDLs or CLPs. A51. Thousands of drivers in New York, who require CDLs for their jobs, would face loss of employment, loan default, closure of small businesses, and inability to cover basic expenses. And because FMCSA also directed New York to pause its issuance and renewal of non-domiciled CDLs, *see* A18, and recently issued a rule prohibiting most immigrant drivers from obtaining or renewing CDLs, most drivers would not be able to reapply for a license after cancellation.[20]

Further, FMCSA's directive to cancel licenses would disrupt the essential public services provided by CDL drivers, who work in

---

[19] *See* A45 (stating that "FMCSA is deeply disappointed by [New York's] refusal to take the necessary corrective actions set forth in the Preliminary Determination" and that "[t]he withholding of Federal funds is the direct and necessary consequence of New York's own actions and its demonstrated disregard for Federal safety standards.").

[20] *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL), 91 Fed. Reg. 7044 (Feb. 13, 2026) (limiting non-domiciled CDLs to only people with H-2A, H-2B, and E-2 visas). Drivers, unions, and a Washington county are currently challenging this rule. *See Rivera Lujan v. FMCSA*, No. 26-1032 (D.C. Cir.), consolidated with *Martin Luther King, Jr. County v. Duffy*, No. 26-1046 (D.C. Cir.).

18

"industries ranging from commercial trucking to sanitation to school transportation." A38. For example, "[a] recent survey of just seven school bus operators … found that more than 7,300 students relied on non-domiciled drivers for transportation to and from school." *Id.* New York is already facing a "serious bus driver shortage impacting children, families, and school districts." A26. And reducing the pool of available drivers "would limit school districts' ability to maintain full route coverage, causing disruptions for students and families alike." A38. Disrupted or reduced bus service diminishes access to critical school resources like meals and extracurricular programs and increases the likelihood of higher rates of tardiness and absenteeism.[21]

Many of these harms have already come to pass in the months since September 29, 2025, when New York paused its issuance and renewal of non-domiciled CDLs. *See* A23, A26. The suspension on license issuance

---

[21] Sebastian Martinez Hickey et al., *The school bus driver shortage remains severe, and bus driver pay is getting worse*, Econ. Pol'y Inst. (Nov. 14, 2026), https://www.epi.org/blog/the-school-bus-driver-shortage-remains-severe-and-bus-driver-pay-is-getting-worse/; Brendan Chen, *How Students' Transportation Options—or Lack Thereof—Affect Educational and Health Outcomes*, Urban Inst. Initiative (Apr. 26, 2023), https://archive-housingmatters.urban.org/articles/how-students-transportation-options-or-lack-thereof-affect-educational-and-health-outcomes.

and renewals has resulted in loss of jobs for transit and school bus drivers, caused widespread fear for drivers who may soon lose their positions, and strained school districts seeking qualified bus drivers.[22]

FMCSA failed to consider these harms to the serious reliance interests of drivers, their families, and communities before it decided to withhold $73.5 million in federal funding. It provided *no* explanation for discounting these substantial harms in favor of the draconian penalty it imposed. For these reasons as well, FMCSA's decision was arbitrary and capricious. *See Encino Motorcars,* 579 U.S. at 222.

---

[22] *See* Alfonso A. Castillo & Darwin Yanes, *School bus driver shortage to worsen with end of immigrant licensing program, operators say*, Newsday (Mar. 9, 2026), https://www.newsday.com/long-island/transportation/cdl-immigrant-driver-licenses-hwjomjkn; Emily Barnes, *Why CDL stoppage could lead to even worse bus driver shortage in NY*, Press Connects (Feb. 25, 2026), https://www.pressconnects.com/story/news/2026/02/25/new-dmv-limitations-may-lead-to-even-worse-bus-driver-shortage-in-ny/88854549007/; Jessica Gould et al., *Immigrant New Yorkers denied commercial driver licenses following Trump funding threat*, Gothamist (Feb. 19, 2026), https://gothamist.com/news/immigrant-new-yorkers-denied-commercial-driver-licenses-following-trump-funding-threat.

## CONCLUSION

For the foregoing reasons, and those set forth in New York's brief, New York's petition should be granted, and FMCSA's final determination should be set aside.

Dated: July 13, 2026

Respectfully submitted,

/s/ *Wendy Liu*
Wendy Liu
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
wliu@citizen.org

*Attorneys for Amici Curiae*

21

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief is composed in a 14-point proportional typeface, Century Schoolbook. The brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) because as calculated by my word processing software (Microsoft Word 365), the brief (excluding those parts permitted to be excluded under the Federal Rules of Appellate Procedure and this Court's rules) contains 3,896 words.

/s/ *Wendy Liu*
Wendy Liu

22

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit on July 13, 2026, by using the ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

/s/ *Wendy Liu*
Wendy Liu