# No. 26-1097

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

STATE OF NEW YORK; NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES,

Petitioners,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, in his official capacity; FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION; DEREK BARRS, in his official capacity,

Respondents.

On Petition for Review of an Order of the
Federal Motor Carrier Safety Administration

**BRIEF FOR RESPONDENTS**

*Of Counsel:*

GREGORY ZERZAN
*General Counsel*

CHARLES E. ENLOE
*Assistant General Counsel*

SAMUEL G. FULLER
*Attorney*
*U.S. Department of Transportation*

REBECCA PETTIT
*Chief Counsel*
*Federal Motor Carrier Safety Administration*

BRETT A. SHUMATE
*Assistant Attorney General*

BRAD HINSHELWOOD
SIMON G. JEROME
*Attorneys, Appellate Staff*
*Civil Division, Room 7209*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1673*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ii

INTRODUCTION 1

STATEMENT OF JURISDICTION 3

STATEMENT OF THE ISSUE 3

STATEMENT OF THE CASE 3

A. Regulatory Background 3

B. Factual Background and Prior Proceedings 7

SUMMARY OF ARGUMENT 13

STANDARD OF REVIEW 14

ARGUMENT 15

THE FINAL DETERMINATION IS LAWFUL 15

A. Lawful Presence Is A Predicate For Lawful Possession Of A CDL 17

B. The Record Demonstrates Substantial Noncompliance 29

C. The DMV's Remaining Arguments Fail 31

CONCLUSION 33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*American Hosp. Ass'n v. Becerra*,
596 U.S. 724 (2022)....................20

*Baptist Mem. Hosp.-Golden Triangle v. Sebelius*,
566 F.3d 226 (D.C. Cir. 2009)....................23

*Bennett v. Kentucky Dep't of Educ.*,
470 U.S. 656 (1985)....................29

*Cablevision Sys. Corp. v. Federal Commc'ns Comm'n*,
570 F.3d 83 (2d Cir. 2009) ....................14

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012)....................27

*Corley v. United States*,
556 U.S. 303 (2009)....................22

*Food & Drug Admin. v. Wages & White Lion Invs., LLC*,
604 U.S. 542 (2025)....................15, 26, 32

*Gundy v. United States*,
588 U.S. 128 (2019)....................21

*Heckler v. Chaney*,
470 U.S. 821 (1985)....................27

*Hibbs v. Winn*,
542 U.S. 88 (2004)....................22

*Kisor v. Wilkie*,
588 U.S. 558 (2019)....................17

*Lal v. Immigration & Naturalization Serv.*,
255 F.3d 998 (9th Cir. 2001)....................27

*Landor v. Louisiana Dep't of Corrs. & Pub. Safety*,
146 S. Ct. 1931 (2026) ........................................28

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)........................................14

*Magellan Tech., Inc. v. U.S. Food & Drug Admin.*,
70 F.4th 622 (2d Cir. 2023)........................................32

*Safe Haven Home Care, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
130 F.4th 305 (2d Cir. 2025)........................................20

*Seven Cnty. Infrastructure Coal. v. Eagle County*,
605 U.S. 168 (2025)........................................15, 17

*Verizon Commc'ns Inc. v. Federal Commc'ns Comm'n*,
156 F.4th 86 (2d Cir. 2025)........................................14

**Statutes:**

Commercial Motor Vehicle Safety Act of 1986,
Pub. L. No. 99-570, tit. XII, 100 Stat. 3207........................................3

Security and Accountability for Every Port Act of 2006,
Pub. L. No. 109-347, 120 Stat. 1884 ........................................18

5 U.S.C. § 706(2)(A) ........................................3, 14

49 U.S.C. § 31311 ........................................3, 4

49 U.S.C. § 31312 ........................................6

49 U.S.C. § 31314 ........................................6

**Regulations:**

49 C.F.R. pt. 383........................................3

49 C.F.R. § 383.71 ....................3, 4, 15, 19, 30

49 C.F.R. § 383.73 ....................5, 19, 20, 21, 24, 25

49 C.F.R. § 383.153 ....................21

49 C.F.R. § 384.212 ....................5

49 C.F.R. § 384.301 .................... 5, 29-30

49 C.F.R. § 384.307 ....................5, 6, 16, 17, 28

**Legislative Materials:**

152 Cong. Rec. SS9584 (daily ed. Sept. 14, 2006)....................19

**Executive Materials:**

*Commercial Driver's License Testing and Commercial Learner's Permit Standards*,
73 Fed. Reg. 19,282 (Apr. 9, 2008)....................18, 25, 26

*Commercial Driver's License Testing and Commercial Learner's Permit Standards*,
76 Fed. Reg. 26,854 (May 9, 2011) .................... 4, 17-18

FMCSA, U.S. Dep't of Transp.,
Report No. MH-2002-093, *Improving Testing and Licensing of Commercial Drivers* (2002), https://perma.cc/FJ5K-CLH7....................18

FMCSA, U.S. Dep't of Transp.,
*List of States FMCSA Determined Were in Substantial Noncompliance*, Regulations.gov, https://perma.cc/Z63D-6TDJ ....................7

Memorandum from Kenneth Mead, Inspector Gen., U.S. Dep't of Transp., to Deputy Sec'y et al. (2004), https://perma.cc/JNS5-KKYM ............................18

*Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)*,
91 Fed. Reg. 7044 (Feb. 13, 2026)............................................5, 21, 22, 23, 24

*Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)*,
90 Fed. Reg. 46,509 (Sep. 29, 2025)................................................................5, 24

**Other Material:**

*Substantial-Performance Doctrine*,
Black's Law Dictionary (12th ed. 2024) ...........................................................30

## INTRODUCTION

Federal law establishes eligibility criteria for aliens not domiciled in the United States to obtain commercial driver's licenses (CDLs) from state driver's licensing agencies. Last year, the Federal Motor Carrier Safety Administration (FMCSA) conducted an annual review of implementation of those criteria by the New York Department of Motor Vehicles (DMV). That review sampled 200 CDLs issued to non-domiciliary foreigners, of which more than half turned out to have been issued with expiration dates well past the period for which the license-holders could demonstrate, at the point they applied for the CDLs, that they were lawfully present in the United States. In several cases, CDLs were issued for seven or eight years longer than the applicants' demonstrated periods of lawful presence. The DMV subsequently explained to FMCSA that the CDLs were issued with overlong expiration dates because the DMV's system did not check a non-domiciliary's period of lawful presence at all when calculating an expiration date.

FMCSA detailed its findings in a Preliminary Determination of Substantial Noncompliance the agency issued to the DMV, explaining that the licenses were improperly issued under federal law. The Preliminary Determination also outlined corrective actions the agency expected the DMV

to take, including identification and cancellation of all overlong CDLs issued. In response to the Preliminary Determination, the DMV disputed that it was obligated by law to limit non-domiciled CDL validity to match the applicant's period of lawful presence. FMCSA then reiterated its explanation of the expiration-date requirement and repeated its request for additional information and corrective action. The DMV, however, again declined.

Contrary to the DMV's protestations, the regulations then in effect prohibited the DMV from issuing non-domiciled CDLs with expiration dates falling beyond the expiration of the documentation presented by the applicant to establish lawful presence. Moreover, the regulatory regime for CDL issuance contemplates that a State preliminarily determined to be out of compliance will work with FMCSA to reestablish its compliance, including through the provision of requested information and the completion of corrective action. The DMV, however, refused to participate in this process, insisting that its view of federal CDL law should prevail over FMCSA's. FMCSA thus properly issued a Final Determination of Substantial Noncompliance.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over the petition for review under 28 U.S.C. § 2342(3)(A).

## STATEMENT OF THE ISSUE

The issue presented is whether FMCSA's Final Determination that the DMV was in substantial noncompliance with federal CDL regulations was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## STATEMENT OF THE CASE

### A. Regulatory Background

The Commercial Motor Vehicle Safety Act of 1986, Pub. L. No. 99-570, tit. XII, 100 Stat. 3207, 3207-170 to 3207-189, and its implementing regulations, 49 C.F.R. pt. 383, establish substantive criteria that an individual must satisfy in order to obtain and maintain a CDL.[1] *See, e.g.*, *id.* § 383.71(b)(2) (requiring a driver to "pass a driving or skills test in accordance with the standards" set by FMCSA). Generally, an individual may obtain a CDL only from the State in which she is domiciled. 49 U.S.C. § 31311(a)(12)(A). The Act, however, also permits the Secretary of

[1] This brief uses "commercial driver's license" or "CDL" to refer collectively to licenses and commercial learner's permits, or CLPs.

Transportation to prescribe the conditions under which a non-domiciliary may obtain a CDL from a State where she is not domiciled. *Id.* § 31311(a)(12)(B)(ii). Under that authority, FMCSA in 2011 promulgated a rule creating the category of "[n]on-domiciled" commercial driver's license for applicants domiciled outside the United States or in a State that does not issue CDLs. *Commercial Driver's License Testing and Commercial Learner's Permit Standards*, 76 Fed. Reg. 26,854, 26,871, 26,878 (May 9, 2011). At present, all States issue CDLs; thus, non-domiciled CDLs are issued almost entirely to aliens domiciled outside the United States.

Primary responsibility for applying statutory and regulatory CDL requirements falls to the States—which retain their traditional authority to issue driver's licenses—as a condition of their receipt of particular highway funding from the federal government. 49 U.S.C. § 31311. At all times relevant here, FMCSA regulations provided that a State must verify the non-domiciliary's identity and lawful presence by means of "an unexpired employment authorization document … issued by [United States Citizenship and Immigration Services (USCIS)] or an unexpired foreign passport accompanied by an approved I–94 form documenting the applicant's most recent admittance into the United States." 49 C.F.R. § 383.71(f)(2)(i) (2024);

*see id.* § 383.73(f)(3) (2024) ("The State must require compliance with the standards for providing proof of legal presence specified in … § 383.71(f)(2)(i)."); *see also id.* § 384.212(a).[2]

To ensure compliance with the Act's regulatory scheme, FMCSA undertakes annual program "review[s] to determine whether or not the State meets the general requirement for substantial compliance." 49 C.F.R. § 384.307(a); *see id.* § 384.301 (outlining general requirements of substantial compliance). "During an [Annual Program Review], FMCSA evaluates all aspects of the State's CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and

[2] In September 2025, FMCSA promulgated an interim final rule that altered aliens' eligibility to obtain non-domiciled CDLs, as well as related documentation requirements, including the specific language quoted here. *See Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)*, 90 Fed. Reg. 46,509, 46,516-17 (Sept. 29, 2025). The D.C. Circuit stayed the interim final rule pending review on November 13, 2025. Order, *Lujan v. FMCSA*, No. 25-1215 (D.C. Cir. Nov. 13, 2025). Subsequently, on February 13, 2026, FMCSA published a final rule incorporating comments received on the interim final rule. *See Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)*, 91 Fed. Reg. 7044 (Feb. 13, 2026). The final rule took effect on March 16, 2026, *id.* at 7044, and has been challenged in the D.C. Circuit, *see* Pet. for Review, *Lujan v. FMCSA*, No. 26-1032 (D.C. Cir. Feb. 12, 2026); Order, *Lujan*, No. 26-1032 (May 5, 2026) (stay pending review denied). Citations in this brief are to the prior version of the requirements, which governed the DMV's conduct at all relevant times. *Accord* A3 n.9.

withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas." A2. Where such a review results in a preliminary determination by the agency that the State is not substantially in compliance, FMCSA notifies the State. 49 C.F.R. § 384.307(b). The State must then take corrective action "adequate to correct the deficiencies noted" and "implemented on a schedule mutually agreed upon by the agency and the State." *Id.* § 384.307(c). The State's failure to complete the required corrective steps on the agreed schedule may result in a final determination of substantial noncompliance. *Id.* § 384.307(d) ("In making its final determination, the FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule."). The Act empowers the agency to impose various penalties depending on the scope and severity of noncompliance, ranging from withholding of a specified portion of federal highway funding, 49 U.S.C. § 31314, to total decertification of the State's CDL program, *id.* § 31312.

### B. Factual Background and Prior Proceedings

Following its Annual Program Reviews in 2025, FMCSA determined that 30 States[3] and the District of Columbia were out of compliance with federal non-domiciled CDL regulations, 25 of which subsequently received formal Preliminary Determinations of Substantial Noncompliance. FMCSA, U.S. Dep't of Transp., *List of States FMCSA Determined Were in Substantial Noncompliance*, Regulations.gov, https://perma.cc/Z63D-6TDJ. Among those States is New York, whose DMV underwent an Annual Program Review beginning in July 2025. A3. On December 12, 2025, after FMCSA's review of the DMV revealed "systemic policy, procedural, and programming errors" with respect to issuance and renewal of non-domiciled CDLs, A4, FMCSA issued a Preliminary Determination of Substantial Noncompliance. In a sample of 200 CDL transaction records, FMCSA discovered that 101 non-domiciled CDLs—more than half of the sample—were issued with expiration dates exceeding the period of the applicant's lawful presence in the United States. A3-16. The periods of overlength were

[3] California, Colorado, Connecticut, Delaware, Idaho, Illinois, Indiana, Iowa, Maine, Maryland, Michigan, Minnesota, Missouri, Nevada, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Washington, and Wyoming.

considerable. In several cases, CDLs were issued for periods of eight years after the applicants' employment authorization documents were due to expire, A6; A17, and in many other cases CDLs were issued for six and seven years beyond the expiration of the applicant's documentation.[4] FMCSA's review also revealed "that six of the driver records sampled showed that DMV issued non-domiciled CDLs to drivers without providing evidence that, at the time the transaction occurred, [the DMV] verified the drivers' lawful presence with an unexpired EAD or unexpired foreign passport and Form I–94," A16, as required by regulation. *See also* A16-18 (documenting these six cases).

To address these shortcomings, FMCSA identified a series of corrective steps for the DMV to take, including an immediate pause on issuance of non-domiciled CDLs; prompt identification and rescission of CDLs issued with overlong expiration dates; an internal audit; and reissuance of the erroneously issued CDLs "only after the … [DMV] ensures

---

[4] Of the 101 overlong CDLs, three were issued for a period exceeding eight years after the expiration date of employment authorization documents, A6 (¶ 15); A17 (¶¶ 1, 2), 11 were issued for a period exceeding seven years longer, A6 (¶ 13); A8 (¶ 31); A9 (¶ 40); A11 (¶¶ 53, 54, 60); A12 (¶ 66); A13 (¶ 72); A14 (¶ 80); A15 (¶¶ 90, 94), and 12 were issued for a period exceeding six years longer, A5 (¶ 4); A6 (¶ 12); A7 (¶ 19); A8 (¶ 28); A11 (¶ 56); A12 (¶ 65); A13 (¶¶ 75, 76, 77); A14 (¶¶ 78, 85); A15 (¶ 87).

that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of Subpart B of [34 C.F.R.] Part 384 and 49 U.S.C. § 31311," and furthermore that the DMV not resume issuing non-domiciled CDLs until "FMCSA provides written confirmation that the State's corrective action plan has been accepted and implemented." A18. Failure to comply, FMCSA warned, risked penalties including withholding of highway funds and decertification of New York's CDL program. A19.

In a January 9 response to the Preliminary Determination of Substantial Noncompliance, the DMV disputed that its practice of issuing CDLs that expired after an alien's period of lawful presence ended violated federal law. A24-25. As for the six cases in which the DMV had not substantiated with evidence during the Annual Program Review that it checked the CDL applicant's lawful presence, the DMV stated that it had reviewed the corresponding records and concluded that the licenses were "validly issued."[5] A25. The DMV did not commit to taking the corrective

[5] FMCSA subsequently determined that the supplemental documentation the DMV provided "appear[ed] to support" the DMV's

*Continued on next page.*

actions FMCSA had identified, stating that it instead sought "to understand how FMCSA intends to address and safeguard the Federal Due Process rights of the holders of unexpired non-domiciled CDLs … affected by FMCSA's action." A26.

On March 13, following an informal conference between FMCSA and the DMV that took place the prior month, FMCSA sent a letter reaffirming its Preliminary Determination. A27-36. In particular, FMCSA underscored that because States could only issue non-domiciled CDLs to applicants who presented unexpired proof of lawful presence, the credentials the DMV had issued with expiration dates exceeding the validity of the documentation presented were improperly issued. A30-31. Accordingly, FMCSA reiterated the need for the DMV to undertake the corrective actions it had previously outlined, A33-34, as well as to provide "additional information … to begin a comprehensive follow-up" to the informal conference in February. A34. FMCSA specifically sought information that would help it understand the

---

compliance with its obligation to check an applicant's employment authorization document with respect to five of the six cases identified, but noted that the CDLs issued in those cases were nevertheless issued with overlong expiration dates. A32. The supplemental documentation provided by the DMV with respect to the sixth case, in any event, "lacked sufficient clarity to rebut the determination of noncompliance" with the DMV's obligation to check foreign applicants' lawful-presence documents. A42.

scope of the problem—the agency knew that the DMV had issued approximately 32,606 outstanding non-domiciled CDLs, *see* A34, but did not yet know how representative its 200-license sample was of that larger population. Accordingly, FMCSA instructed the DMV to provide a "comprehensive breakdown of the approximately 32,606 unexpired non-domiciled … CDLs," including "[h]ow many … CDLs were issued beyond the expiration of immigration documents." A34. FMCSA also sought greater detail concerning the steps the DMV took to train its staff on ensuring compliance with federal CDL law, and so requested several categories of relevant information. A34-35. Moreover, in response to the due process concern the DMV raised in its January 9 letter, FMCSA explained that the "DMV's corrective action implementation schedule may account for any administrative due process actions required under State law for drivers whose operating privileges will be affected." A33-34. And as it had in the Preliminary Determination, A19, FMCSA informed the DMV that its "failure to complete, or undue delay in completing, the required corrective actions … will result in FMCSA issuing a Final Determination of Substantial Noncompliance and withholding up to four percent of" certain highway funds New York was otherwise eligible to receive, A35.

The DMV responded with a blanket refusal to provide the follow-up information requested and to undertake any corrective action. A37-38. In doing so, the DMV repeated its view that federal law did not require conformity between non-domiciled CDLs and proof of lawful presence and as a result that it was not obligated to rescind any non-domiciled CDLs. A37-38. The DMV did not explain, however, why it believed it was no longer obligated to cooperate with FMCSA's oversight and remedial efforts. *See* A37-38. FMCSA thus issued, on April 16, a Final Determination of Substantial Noncompliance. A39-46. The Final Determination rested primarily on the DMV's initial issuance of overlong CDLs, but also took note of the DMV's refusal to cooperate with the agency. A45 ("[T]he evidence clearly indicates that New York failed to comply with 49 [C.F.R.] § 384.212 because it issued non-domiciled CDLs and CLPs that exceeded the expiration dates of the drivers' lawful presence documents presented at the time of the transactions. … [B]ecause DMV mistakenly believes that the Preliminary Determination is without merit, it refuses to even identify the drivers with noncompliant CLPs and CDLs and take corrective action."). To date, the DMV has not notified FMCSA of any corrective steps taken in

response to FMCSA's Preliminary and Final Determinations apart from a pause on the issuance of non-domiciled CDLs.

One week after FMCSA issued its Final Determination, the DMV petitioned this Court for review of that order. Pet. for Review (Apr. 24, 2026).

## SUMMARY OF ARGUMENT

FMCSA's issuance of the Final Determination of Substantial Noncompliance was lawful. The federal regulatory framework governing CDLs envisions that States will cooperate with FMCSA when the agency identifies deficiencies in the States' systems for CDL issuance. But after the DMV's 2025 review concluded with a finding that it had issued overlong CDLs in more than half of the cases sampled, the DMV ceased to cooperate, refusing to provide additional requested information or to take remedial action. FMCSA thus appropriately and reasonably determined that the DMV was not substantially in compliance with its obligations. The DMV based its refusal on its disagreement with FMCSA's interpretation of the provision limiting the maximum duration of non-domiciled CDLs. That disagreement is largely beside the point, because the DMV was obligated to work with FMCSA toward resolution of the issues identified. But in any

event, the DMV misreads the governing federal regulations, which link issuance of a CDL to lawful presence. Separately, the DMV's arguments that the Final Determination is arbitrary and capricious fail because they rest on false premises—FMCSA did not primarily rely on a safety rationale in issuing the Final Determination, so evidence of any safety risk posed by the DMV's shortcomings is beside the point, and the agency did not change its position, so it was not obligated to consider reliance interests engendered by the (nonexistent) prior position the DMV alleges.

## STANDARD OF REVIEW

This Court uses standards applicable to the Administrative Procedure Act when analyzing a petition for review under the Hobbs Act. *See Verizon Commc'ns Inc. v. Federal Commc'ns Comm'n*, 156 F.4th 86, 94 (2d Cir. 2025). Under that framework, the Court "will generally overturn agency action only if it is 'arbitrary, capricious, an abuse of discretion,' or otherwise contrary to law." *Id.* (quoting 5 U.S.C. § 706(2)(A)). Interpretive questions are generally subject to de novo judicial review. *See id.* (first citing *Cablevision Sys. Corp. v. Federal Commc'ns Comm'n*, 570 F.3d 83, 91 (2d Cir. 2009); and then citing *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 394 (2024)). "But when an agency exercises discretion granted by a statute,"

as here, the Court applies the arbitrary-and-capricious standard, "ask[ing] not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Seven Cnty. Infrastructure Coal. v. Eagle County*, 605 U.S. 168, 179-80 (2025); *see Food & Drug Admin. v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 567 (2025) (explaining that an agency determination be upheld if the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (alterations in original) (quotation marks omitted)).

## ARGUMENT

## THE FINAL DETERMINATION IS LAWFUL

Under federal law in effect at the times relevant here, a foreign non-domiciliary could only possess a CDL for as long as she was lawfully present in the United States. That proposition flowed as a matter of common sense from the fact that a non-domiciliary CDL applicant was required to present "unexpired" proof of lawful presence alongside her application—not only when she first applied for a CDL, 49 C.F.R. § 383.71(f)(2)(i) (2024); *see* A3, but also upon renewal of the credential, 49 C.F.R. § 383.71(d)(5) (2024). The Final Determination of Substantial Noncompliance here resulted from the

DMV's failure to comply with that requirement. As FMCSA's annual review showed, the DMV "failed to program its systems to ensure that the expiration date of non-REAL ID compliant non-domiciled CLPs and CDLs d[id] not exceed drivers' legal presence." A4. The DMV's failure led to more than half of the non-domiciled CDLs FMCSA sampled being issued with validity periods that lasted a significant amount of time—in several cases, up to eight years, A6; A17—after the expiration of the lawful presence demonstrated by the applicant. *See* A4-18.

Not only did the DMV issue overlong CDLs in more than half of the cases sampled, it also categorically refused to provide information responsive to FMCSA's requests, and likewise refused to take any "corrective action" directed by FMCSA, even after FMCSA advised the DMV of the correct interpretation of the governing regulations, gave it an opportunity to comply, and assured the DMV that it would accommodate concerns the DMV raised about the due process rights of potentially affected license holders. The DMV's intransigence flies in the face of the cooperative scheme federal law establishes, under which States implement regulatory criteria established by FMCSA and are thereafter responsible for "cooperat[ing]" with FMCSA's oversight reviews, 49 C.F.R. § 384.307(a), "provid[ing] any information

requested by the FMCSA," *id.*, and taking "corrective action" to remedy deficiencies identified, *id.* § 384.307(c), (d). FMCSA thus appropriately concluded that the DMV was not in substantial compliance with the governing regulations. *See Seven Cnty. Infrastructure Coal. v. Eagle County*, 605 U.S. 168, 179-80 (2025).

### A. Lawful Presence Is A Predicate For Lawful Possession Of A CDL

1. FMCSA correctly explained that its regulations require that the expiration date of a non-domiciled CDL not exceed a licensed driver's period of lawful presence in the United States. That result follows from the application of "all traditional methods of interpretation" to FMCSA's regulation, including the plain meaning of the text and the structure of the regulatory scheme. *Kisor v. Wilkie*, 588 U.S. 558, 581 (2019).

As noted, because every State issues CDLs to its own domiciliaries, non-domiciled CDLs are issued almost exclusively to noncitizens domiciled abroad. In keeping with that recognition, FMCSA explained that the "fundamental purpose of FMCSA's regulations establishing legal presence requirements for all CLP and CDL applicants" is to ensure that non-domiciled CDL holders "operate commercial motor vehicles while *lawfully present* in the United States." A31 (emphasis added) (citing 76 Fed. Reg. at

26,856). The requirement to verify lawful presence derives from security concerns recognized by Congress and the Executive Branch in the aftermath of the 9/11 terrorist attacks. As early as 2002, the Department of Transportation Inspector General recommended that "[d]emonstrating legal presence in the United States should be a requirement to obtain a CDL," FMCSA, U.S. Dep't of Transp., Report No. MH-2002-093, *Improving Testing and Licensing of Commercial Drivers*, at vi (2002), https://perma.cc/FJ5K-CLH7, in light of "the potential use of trucks in terrorist activities," *id.* at 10. *See also* Memorandum from Kenneth Mead, Inspector Gen., U.S. Dep't of Transp., to Deputy Sec'y et al. 1-2 (2004), https://perma.cc/JNS5-KKYM (again emphasizing the need for a legal presence requirement). Congress subsequently mandated that FMCSA implement the Inspector General's recommendation. Security and Accountability for Every Port Act of 2006, Pub. L. No. 109-347, tit. VII, § 703, 120 Stat. 1884, 1944; *see Commercial Driver's License Testing and Commercial Learner's Permit Standards*, 73 Fed. Reg. 19,282, 19,285 (Apr. 9, 2008). In remarks accompanying his introduction of that legislation, Senator Pryor underscored that "homeland security" would be advanced by "verify[ing] legal status" of CDL applicants, in part "because trucks have

been used in terrorist attacks in years past." 152 Cong. Rec. S9584 (daily ed. Sept. 14, 2006) (statement of Sen. Mark Pryor).

Consistent with Congress' direction, FMCSA has long made clear that a threshold requirement for obtaining a non-domiciled CDL is lawful presence. And as FMCSA explained, "[t]he regulatory universe of non-domiciled … CDLs is premised on the basic notion that a non-domiciled driver's commercial motor vehicle driving privileges cannot extend beyond that driver's lawful presence in the United States." A30. The regulations in effect at the time of the DMV's conduct here required the DMV to "compl[y] with the standards for providing proof of legal presence specified in … [49 C.F.R.] § 383.71(f)(2)(i)." 49 C.F.R. § 383.73(f)(3) (2024). Those standards, in turn, required an applicant to present "an unexpired employment authorization document … issued by USCIS or an unexpired foreign passport accompanied by an approved I–94 form documenting the applicant's most recent admittance into the United States." *Id.* § 383.71(f)(2)(i) (2024). "Unexpired" documentation, however, by definition expires, and so individuals without lawful presence cannot properly hold a CDL.

That conclusion is reinforced by the fact that the requirement to verify lawful presence applied not only at the moment an applicant first sought a

CDL, but also each time the applicant sought to renew the credential. 49 C.F.R. § 383.73(d)(7) (2024). In other words, the renewal regulations presupposed that an individual would maintain lawful presence from the time he first obtained a CDL until the time he sought to renew it, without an intervening revocation or expiration of status, and that the renewal process would provide an opportunity to ensure that the individual remained lawfully present—put otherwise, that his lawful presence had not expired or been revoked, removing the predicate for CDL issuance.

Just as a State could not properly issue a non-domiciled CDL to an applicant who presented an employment authorization that expired the day before, a State could not issue a CDL valid for up to eight years based on an employment authorization document showing a period of lawful presence that expired the next day. As FMCSA explained, any other interpretation "would allow nondomiciled drivers unlawfully present in the United States to operate commercial motor vehicles." A31; *see American Hosp. Ass'n v. Becerra*, 596 U.S. 724, 737 (2022) ("We must hesitate to adopt an interpretation that would eviscerate such significant aspects of the statutory text."); *Safe Haven Home Care, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 130 F.4th 305, 316 (2d Cir. 2025) ("[W]e must not 'construe words "in a

vacuum.'" Instead, it is critical that we look to the broader regulatory context to discern the meaning of [a] regulation." (citations omitted) (quoting *Gundy v. United States*, 588 U.S. 128, 141 (2019))).

2. The DMV's counterarguments fail to convince. On the text, the DMV addresses § 383.71(f)(2)(i) in little more than one sentence, arguing only that that provision (as "incorporated" by 49 C.F.R. § 384.212) "does not address expiration dates." Br. 27. But as explained above, because lawful presence is a threshold requirement for holding a non-domiciled CDL, the duration of lawful presence proven by the immigration document an applicant presents necessarily determines the latest possible license expiration date.

The DMV's contextual arguments fare no better. The DMV insists that § 383.71(f)(2)(i) could have no bearing on a CDL's validity period because other regulations set an eight-year maximum duration for CDLs and mandate that States list expiration dates on CDLs, respectively. Br. 27 (citing 49 C.F.R. §§ 383.73(c)(9), 383.153(a)(7)). But neither regulation conflicts with § 383.71(f)(2)(i). The former "merely provide[s] a regulatory ceiling for … CDL expiration generally," 91 Fed. Reg. at 7078; *see also* A30, and thus governs the maximum period for *all* CDLs, including those issued

to U.S. citizens, who have no set period of lawful presence. The latter says nothing about the period for which a CDL may be issued. Those general provisions instead operate alongside the non-domiciled CDL specific requirement of lawful presence. Because it is possible to give all three provisions effect, the Court should do so. *Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (alteration omitted) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004))).

Next, the DMV suggests that because FMCSA in September 2025 promulgated an interim final rule[6] making explicit that a non-domiciled CDL's validity could not extend beyond an applicant's demonstrated lawful presence, that requirement did not exist before. Br. 28-29; *see also* Br. 28 (describing a maximum-duration provision applicable to REAL IDs). Untrue. As a general matter, "when a legislative or executive body adopts a new clarifying law or rule, it does not necessarily follow that an earlier

---

[6] As explained above, *supra* n.2, the September 2025 interim final rule was superseded in February 2026 by a final rule that is identical in respects relevant to this appeal. *See* 91 Fed. Reg. at 7044 ("This final rule builds on and makes minor revisions to the regulatory changes in the [interim final rule] published on September 29, 2025… ."); *accord* Br. 13.

version did not have the same meaning." *Baptist Mem. Hosp.-Golden Triangle v. Sebelius*, 566 F.3d 226, 229 (D.C. Cir. 2009) (Kavanaugh, J.). FMCSA addressed that directly in issuing its final rule, explaining that the changes effected by the final rule (and the interim final rule that preceded it) merely "underscore existing substantive rules governing the period of validity for non-domiciled CLPs and CDLs," and thus do not "create new rules on non-domiciled CLP and CDL periods of validity that did not exist" under the regulations that govern here. 91 Fed. Reg. at 7078; *see id.* ("FMCSA disagrees that under the pre-IFR regulations, [State Driver's Licensing Agencies] were not required to ensure the expiration date of the non-domiciled CLP or CDL did not exceed the driver's lawful presence."). That other portions of the final rule effected substantive "change[s]" to the pre-existing regulations, *see* Br. 33 (quoting 91 Fed. Reg. at 7047), has no bearing on the specific provisions here.

To the extent FMCSA's subsequent rulemaking is relevant, it is simply to underscore FMCSA's explanation that "[t]he requirements regarding verification of lawful presence" that governed the DMV's conduct here "would have been rendered meaningless if a [state agency could] issue a non-domiciled CLP or CDL that expires after the expiration of the driver's lawful

presence document," as that interpretation would be "contrary to the fundamental purpose of FMCSA's regulations establishing legal presence requirements for all CLP and CDL applicants: to ensure CLP and CDL drivers, including non-domiciled drivers, operate commercial motor vehicles while lawfully present in the United States." 91 Fed. Reg. at 7078; *see also* 90 Fed. Reg. at 46,512; A31. Indeed, as the agency explained, it would be difficult to understand why a DMV would be required "to verify lawful presence" in the first place if nothing about the duration of the license turned on that requirement. 91 Fed. Reg. at 7078.

Nor is there any merit to the DMV's invocation of the regulatory provision requiring procedures for issuance of non-domiciled CDLs generally to be "identical" to those governing issuance of domiciled CDLs. Br. 30 (emphasis omitted) (quoting 49 C.F.R. § 383.73(f)(2) (2024)). The immediately preceding subsection explained that non-domiciled CDL applicants were subject to a different requirement than other applicants—the requirement to demonstrate lawful presence by means of unexpired documentation, 49 C.F.R. § 383.73(f)(1) (2024) (incorporating the limitations of 49 C.F.R. § 383.71(f)(1))—while a subsequent subsection explained that the DMV was obligated to "compl[y] with the standards for providing proof

of legal presence specified in § 383.71(b)(9) and § 383.71(f)(2)(i)," *id.* § 383.73(f)(3) (2024).

The DMV's attempt to derive support for its claim that duration of lawful presence is irrelevant to the period of license validity from the history of FMCSA's regulatory actions is also mistaken. Br. 31-34. First, the DMV cites the rulemaking that in 2011 produced the eight-year maximum validity period described above, asserting that "the agency expressly rejected a shorter validity period for CDLs." Br. 31. That statement is both unsurprising and immaterial, however, because the 2011 final rule addressed a different set of concerns. Maximum periods for CDLs were needed because States had been gradually extending validity periods "to handle more drivers with the same staff and budget," thus "defeating the purpose of renewal," which is to "allow[] the driver to update information on the license and the State to update this information on the electronic driving record, place a new photograph on the license, check the driving record (*i.e.* current State of licensure, [the Commercial Driver's License Information System], and Problem Driver Pointer System … ), and, in the case of the hazardous materials endorsement, require the driver to retake" certain testing. 73 Fed. Reg. at 19,288. But in the same rulemaking process, FMCSA explained that

it was implementing the lawful presence requirements for non-domiciled CDLs "to establish a legal presence requirement for obtaining a CDL." *Id.* at 19,285.

Even further off the mark is the DMV's assertion that because "[m]any categories of employment authorization held by nondomiciled individuals are issued for relatively short durations but are frequently renewed or extended," there existed "good reasons to give States [the] flexibility" to "reduce the number of license renewals [that] needed to be processed." Br. 32 (citing the DMV's own declaration). That is not the position the agency espoused—as explained, *supra* pp. 19-20, FMCSA's regulations envisioned that a non-domiciliary CDL applicant would demonstrate lawful presence at the moment of applying for a CDL, as well as at the moment of renewing the same—*i.e.*, that lawful presence would not lapse or be revoked in between the times of initial application and renewal. The reasons for that position are as "good" as any supporting the position the DMV might wish FMCSA had taken, but the Administrative Procedure Act leaves it to FMCSA to strike the appropriate balance of such policy considerations. *Food & Drug Admin. v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 567 (2025).

The DMV also errs in suggesting that because prior annual reviews did not result in determinations of substantial non-compliance grounded in the DMV's failure to limit non-domiciled CDLs to an applicant's period of lawful presence, FMCSA necessarily understood the regulations not to contain such a requirement. Br. 32-33. But the DMV points to no instance in which FMCSA ever previously adopted the position that States could issue non-domiciled CDLs that exceeded an applicant's demonstrated period of lawful presence. There is thus no "inconsisten[cy]" in FMCSA's Final Determination. *Cf.* Br. 33 n.13 (citing *Lal v. Immigration & Naturalization Serv.*, 255 F.3d 998, 1006-07 (9th Cir. 2001)). At most, those past reviews demonstrate only that FMCSA focused on other matters, not that anything can be gleaned about the agency's substantive view of the governing regulations. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 157-58 (2012) ("We acknowledge that an agency's enforcement decisions are informed by a host of factors, some bearing no relation to the agency's views regarding whether a violation has occurred." (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985))); *see* Br. 33. Nor can the DMV claim any potential for surprise here. FMCSA explained the basis for its preliminary determination and offered the State an opportunity to remedy the deficiencies it identified

before a penalty was assessed. A18-20; A33-36. The DMV cannot then reasonably be said to be unfairly surprised by the penalty FMCSA repeatedly suggested it might be compelled to levy. A19; A35.

For these reasons and more, the DMV's invocation of the Supreme Court's decision in *Landor v. Louisiana Department of Corrections & Public Safety*, 146 S. Ct. 1931 (2026), falls flat. As the foregoing discussion makes clear, the regulations in effect prescribed that licenses could not be issued for a period that exceeded—in many cases by years—an individual's period of lawful presence. Furthermore, unlike in *Landor* and similar cases, the DMV cannot claim any surprise or subjection to retroactive liability it could not have anticipated at the moment New York accepted federal highway funds. *See Landor*, 146 S. Ct. at 1939. Not only was the agency's reading itself apparent, but following its 2025 annual review, FMCSA offered the DMV the opportunity to conform the DMV's CDL-issuance practices without penalty. *See supra* pp. 7-12. There can be little question the DMV consented to the "unambiguous[]" obligation, *Landor*, 146 S. Ct. at 1941, to "implement … corrective action … adequate to correct the deficiencies noted" at that point, 49 C.F.R. § 384.307(c). Even in the context of traditional grant programs, the Supreme Court has recognized that "the Federal Government simply

could not prospectively resolve every possible ambiguity" that might arise, and in "an ongoing, cooperative program" giving recipients "an opportunity to seek clarification of the program requirements," any ambiguities should not "invariably be resolved against the Federal Government." *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 669 (1985). The DMV here received far more than simply "an opportunity to seek clarification."

### B. The Record Demonstrates Substantial Noncompliance

In the alternative, the DMV argues that even if federal law did require the non-domiciled CDLs it issued to expire upon or before the end of a foreign applicant's demonstrated period of lawful presence, the DMV's failure to adhere to that requirement did not take it outside "substantial compliance" with federal CDL law. Br. 35-38. That position is mistaken in multiple respects.

To start, FMCSA has defined "substantial compliance" to mean that the "State must meet *each and every standard* of [49 C.F.R. part 384, subpart B] by means of the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices," 49 C.F.R.

§ 384.301(a) (emphasis added), including the maximum validity of non-domiciled CDLs, *id.* § 383.71(f)(2)(i) (2024). So it is irrelevant that "dozens of … requirements bear on the issuance of [CDLs]," Br. 36 (emphasis omitted); the point is that the DMV failed to comply with one of the standards to which § 384.301(a) required it to adhere. And that failure appears to have affected a significant portion of the licenses in question: more than half of the non-domiciled CDLs FMCSA sampled were issued in violation of § 383.71(f)(2)(i). The record does not contain the total number of overlong licenses (as opposed to those sampled), of course, because the DMV refused to investigate or transmit that information to FMCSA as the agency requested. A34-35. If a majority is not "substantial," it is hard to imagine what is. In any event, it cannot be said that the "essential purpose" of a requirement limiting CDLs to individuals lawfully present in the United States has been "accomplished" where more than half of those CDLs last for a period—up to eight years, A6; A17—after their lawful presence was due to come to an end. *Cf.* Br. 35 (citing *Substantial-Performance Doctrine*, Black's Law Dictionary (12th ed. 2024)).

### C. The DMV's Remaining Arguments Fail

Finally, the DMV repackages its disagreement with FMCSA's interpretation of the expiration requirement for non-domiciled CDLs as an assortment of arbitrary-and-capricious claims. These arguments, too, fail.

First, the DMV asserts that the Final Determination is arbitrary "to the extent [it] rests on the claim that New York's practice with respect to nondomiciled CDLs and CLPs presents 'a significant safety risk.'" Br. 38 (quoting A45). The DMV seeks to convert a single, isolated statement into the central rationale of the Final Determination. But the Final Determination is clear that it rests on the DMV's failure to substantially comply with the non-domiciled CDL issuance regulations and failure to undertake corrective action to remedy those errors. A42 ("[T]he 2025 [Annual Program Review] uncovered that [the] DMV made no effort to ensure the expiration date of non-domiciled CDLs that were *not* REAL ID compliant did not exceed the date of the drivers' lawful presence documents. … New York's systemic noncompliance in this regard is made even more egregious by the State's refusal to take any corrective action to address it … .").

Second, the DMV faults FMCSA for "chang[ing] course" on the question of the maximum duration of non-domiciled CDLs without displaying awareness that it was doing so or considering reliance interests that would be undermined. Br. 40-43. These arguments miss their mark because the premise on which they rest—the notion that FMCSA changed position—is erroneous. As the Supreme Court explained just last year, the "change-in-position doctrine" only applies where "an agency acts inconsistent[ly] with an earlier position, performs a reversal of [its] former views as to the proper course, or disavow[s] prior inconsistent agency action as no longer good law." *Wages & White Lion Invs.*, 604 U.S. at 569-70 (alterations in original) (citations and quotation marks omitted). Here, as noted, FMCSA never espoused the position that non-domiciled CDLs could extend beyond a foreign applicant's period of lawful presence. At most, the fact that prior Annual Program Reviews did not result in determinations of substantial compliance reflects that FMCSA opted to "focus on other aspects of [the DMV's] CDL program," A43. *See supra* p. 27. Accordingly, FMCSA was under no obligation to consider the interests of those who might have relied on a position the agency did not adopt. *See Magellan Tech., Inc. v. U.S. Food & Drug Admin.*, 70 F.4th 622, 630 (2d Cir. 2023) ("Given that the FDA did

not impose a new evidentiary standard on Magellan, the FDA did not need to provide notice or consider its reliance interests.").

## CONCLUSION

For the foregoing reasons, the petition for review should be denied.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

BRAD HINSHELWOOD

*/s/ Simon G. Jerome*
SIMON G. JEROME
*Attorneys, Appellate Staff*
*Civil Division, Room 7209*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1673*
*simon.g.jerome@usdoj.gov*

*Of Counsel:*

GREGORY ZERZAN
*General Counsel*

CHARLES E. ENLOE
*Assistant General Counsel*

SAMUEL G. FULLER
*Attorney*
*U.S. Department of Transportation*

REBECCA PETTIT
*Chief Counsel*
*Federal Motor Carrier Safety Administration*

AUGUST 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,612 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

*s/ Simon G. Jerome*

SIMON G. JEROME

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate ACMS system.

*s/ Simon G. Jerome*

SIMON G. JEROME