26-1097
*State of New York et al. v. U.S. Department of Transportation et al.*

# United States Court of Appeals
# For the Second Circuit

August Term 2026
Argued: September 28, 2026
Decided: November 13, 2026

No. 26-1097

STATE OF NEW YORK, NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES,

*Petitioners,*

*v.*

UNITED STATES DEPARTMENT OF TRANSPORTATION, SEAN DUFFY, in his official capacity as Secretary of the Department of Transportation, FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, DEREK BARRS, in his official capacity as Administrator of the Federal Motor Carrier Safety Administration,

*Respondents.*

On Petition for Review of a Final Determination of the Federal Motor Carrier Safety Administration

---

Before: NATHAN, MERRIAM, and SCHWARTZ, *Circuit Judges*.

The State of New York petitions for review of a final determination by the Federal Motor Carrier Safety Administration (FMCSA), which found that New York had failed to comply substantially with the federal regulations then governing the issuance of commercial driver's licenses to individuals not domiciled in the United States. The agency determined that New York had violated a regulatory requirement that states match the validity periods of non-domiciled licenses to the expiration dates on drivers' lawful presence paperwork. On that basis, FMCSA withheld four percent of New York's highway and transportation funding for the 2027 fiscal year.

New York argues that the final determination was arbitrary, capricious, or contrary to law. We agree. As FMCSA itself concedes, the plain text of the federal regulations in place during the relevant period did not contain an expiration-matching requirement. The regulatory structure and history confirm that conclusion. We therefore **GRANT** New York's petition and set aside FMCSA's final determination.

Judge Schwartz concurs in a separate opinion.

---

ANTHONY R. RADUAZO, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Ester Murdukhayeva, Deputy

Solicitor General, *on the brief*) for Letitia James, Attorney General of the State of New York, New York, NY, *for Petitioners*.

SIMON G. JEROME, Attorney, Appellate Staff Civil Division (Brad Hinshelwood, Attorney, Appellate Staff Civil Division, Brett A. Shumate, Assistant Attorney General, U.S. Department of Justice, Samuel G. Fuller, Attorney, Charles E. Enloe, Assistant General Counsel, Gregory Zerzan, General Counsel, U. S. Department of Transportation, Rebecca Pettit, Chief Counsel, Federal Motor Carrier Safety Administration, *on the brief*), Washington, DC, *for Respondents*.

NATHAN, *Circuit Judge*:

Pursuant to federal regulations in place until recently, New York issued non-domiciled commercial driver's licenses (CDLs) to noncitizens who were able to demonstrate that they were lawfully present at the time of application. New York issued such licenses for default validity periods of five years after initial issuance and eight years after renewal—the same as for domiciled licenses. In 2026, based on that expiration date policy, the Federal Motor Carrier Safety Administration (FMCSA) issued a final determination that New York was not substantially compliant with federal licensing regulations. Specifically, FMCSA determined that the governing regulations required states to match the expiration dates on non-domiciled CDLs to the expiration dates on drivers' lawful presence paperwork. Because New York had not done so, the agency stated that it would withhold four percent of the State's federal-aid highway funds for fiscal year 2027.

This case raises one question: Was FMCSA's final determination arbitrary, capricious, or contrary to law? We conclude that it was. FMCSA concedes that the plain text of the regulations does not contain an expiration-matching requirement, and regulatory structure and history reinforces that conclusion. Accordingly, we grant New York's petition and set aside the final determination.

## BACKGROUND

### I. Regulatory Background

The federal Commercial Motor Vehicle Safety Act governs states' issuance of driver's licenses for commercial vehicles, such as

trucks, trailers, limousines, and buses, which are used to transport passengers and property in interstate commerce. 49 U.S.C. § 31302. It authorizes the United States Secretary of Transportation to "prescribe regulations on minimum uniform standards" for the issuance of such licenses, *id.* § 31308, and withhold federal-aid highway funding if states fail to "comply substantially" with them, *id.* § 31314(a). The Secretary performs these functions through FMCSA—an agency within the Department of Transportation.

The regulations in place during the relevant period[1] permitted states to issue CDLs and commercial learner's permits (CLPs) "only to persons" domiciled in that state, "except that the State may issue a [n]on-domiciled CLP or CDL under" specified conditions. 49 C.F.R. § 384.212(a). Those conditions were as follows.

First, Section 383.23 provided that states could issue non-domiciled licenses to individuals "domiciled in a foreign jurisdiction," if that jurisdiction did not "test[] drivers and issue[] CDLs" in accordance with federal standards. *Id.* § 383.23(b)(1).

Second, Section 383.71 set out the requirements for an applicant to obtain a CDL. An applicant for an initial CDL was required to, for example, pass a driving or skills test and give identifying information to the issuer. *Id.* § 383.71(b)(2), (4). An applicant was also required to "provide proof of citizenship or lawful permanent residency, . . . or to be registered under paragraph (f) of this section." *Id.* § 383.71(b)(9). Paragraph (f), in turn, required an applicant for a non-domiciled CDL to satisfy the same requirements as domiciled applicants, except:

[1] Unless otherwise specified, all citations to FMCSA's regulations refer to provisions in effect before September 2025.

> An applicant domiciled in a foreign jurisdiction must provide an unexpired employment authorization document (EAD) issued by USCIS or an unexpired foreign passport accompanied by an approved I–94 form documenting the applicant's most recent admittance into the United States. No proof of domicile is required.

*Id.* § 383.71(f)(2)(i). Accordingly, the application requirements for non-domiciled and domiciled drivers were the same, except that non-domiciled applicants were required to provide lawful presence documentation instead of proof of citizenship or lawful permanent residency.

Third, Section 383.73 enumerated the procedures that states were required to follow to issue a license. As relevant here, prior to issuing an initial CDL, a state was required to "[m]ake the CDL valid for no more than 8 years from the date of issuance." *Id.* § 383.73(b)(9). The regulation further provided that state procedures for the issuance of non-domiciled licenses "must at a minimum be identical to those pertaining to any other CLP or CDL," save for three narrow exceptions not applicable here. *Id.* § 383.73(f)(2). In addition, the regulation required the state to ensure "compliance with the standards for providing proof of legal presence specified in" Section 383.71. *Id.* § 383.73(f)(3).[2]

---

[2] In late September 2025, FMCSA issued an interim final rule requiring states to "ensure that the period of validity of the non-domiciled CLP or CDL does not exceed the Admit Until Date or expiration date on the applicant's" immigration documents. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509, 46525 (Sept. 29, 2025). The D.C. Circuit stayed the interim final rule,

## II. Factual Background

The New York State Department of Motor Vehicles oversees the issuance of commercial driver's licenses in the State. New York has long issued non-domiciled licenses to foreign citizens living in the United States, such as Deferred Action for Childhood Arrival (DACA) recipients, asylees, and refugees. As of July 2025, there were approximately 32,600 non-domiciled CDL and CLP holders, "representing approximately seven percent of the total" active CDL and CLP issuances in the State. App'x at 51.

For non-domiciled applicants, the process for obtaining or renewing a commercial license was largely the same as for U.S. citizens or lawful permanent residents. However, instead of providing proof of citizenship or lawful permanent residency, non-domiciled applicants were required to provide an unexpired EAD or foreign passport accompanied by an approved I-94 form. New York's longstanding practice was to issue non-domiciled CDLs, like domiciled CDLs, with default expiration dates of five years after initial license issuance, and eight years after license renewal. Prior to 2025, FMCSA had never found New York noncompliant with federal commercial licensing requirements based on that practice or any

---

finding that it was likely issued without consulting the states. *Rivera Lujan v. Fed. Motor Carrier Safety Admin.*, No. 25-1215, 2025 WL 3182504, at *1–2. (D.C. Cir. Nov. 13, 2025). In February 2026, FMCSA issued a final rule incorporating the same language following a notice-and-comment period. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 91 Fed. Reg. 7044, 7047 (Feb. 13, 2026). The amended regulations had an effective date of March 16, 2026. *Id.* at 7044. In May, the D.C. Circuit refused to stay the final rule pending appeal. *Lujan v. FMCSA*, No. 26-1032 (D.C. Cir. May 5, 2026) (per curiam).

other.

In July 2025, FMCSA commenced its annual review of New York's licensing program. Five months later, the agency issued a preliminary determination that New York was substantially noncompliant with federal regulations. It stated that FMCSA had "obtained evidence of systemic policy and procedural errors in New York's issuance of non-domiciled" CLPs and CDLs. App'x 1.[3] Specifically, "FMCSA found that [New York] issued non-domiciled CDLs that extend beyond the expiration of drivers' lawful presence in the United States[.]" *Id*. The agency explained:

> Regulations in effect prior to September 29, 2025, required that States accept as valid only *unexpired* lawful presence documents, which also meant that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). . . . Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents.

App'x 3 (emphasis in original). FMCSA stated that, of the 200 non-domiciled CDLs and CLPs it sampled, 101 remained valid after the expiration date on the lawful presence document(s) presented by the applicant. The agency required that New York take "immediate corrective action." App'x 1. Among other things, it directed the State

---

[3] New York challenges FMCSA's final determination with respect to both CDLs and CLPs but focuses primarily on CDLs. For simplicity, we refer only to CDLs throughout the opinion.

to "[i]mmediately pause the issuance of all . . . non-domiciled CLPs and CDLs" and "void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs[.]" App'x 18. The agency warned that New York's failure to do so could result in the agency "initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL program." App'x 1.

New York contested the preliminary determination. It argued that an expiration-matching requirement "did not exist anywhere in law or regulation" during the relevant period, and that "FMCSA cited no express regulatory language or any other authority for what appears to be a novel interpretation of the regulation." App'x 24. New York noted that "FMCSA has never previously . . . made a preliminary determination that New York failed to meet requirements for substantial compliance with the standards for issuing non-domiciled CDLs and CLPs for such reason." *Id*. Accordingly, New York requested more information about the basis for FMCSA's interpretation.

After more back-and-forth and an informal conference, FMCSA issued its final determination in April 2026. The agency reiterated its conclusion that "New York has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs[.]" App'x 45. FMCSA stated that the expiration-matching requirement was "not a new requirement," and that its "focus on other aspects of a State's CDL program in previous years" did not preclude it from enforcing the requirement now. App'x 43. FMCSA stated that it was "deeply disappointed" with New York's

refusal to take prompt corrective action. App'x 45.[4]

FMCSA's final determination triggered statutory penalties. It announced that it was withholding four percent of the federal-aid highway funding that would otherwise be apportioned to New York for the upcoming fiscal year. *See* 49 U.S.C. § 31314(c)(1); 49 C.F.R. § 384.401(a). If New York "persist[ed] in substantial noncompliance . . . in subsequent years," FMCSA threatened to withhold up to eight percent of New York's federal highway funding. App'x 45. The initial withholding amounted to $73,502,543 and subsequent withholdings could reach $147,005,086. *Id.*

New York petitioned this Court for review of FMCSA's final determination.

## STANDARD OF REVIEW

We have "exclusive jurisdiction" to "set aside . . . all rules, regulations, or final orders of the Secretary of Transportation[.]" 28 U.S.C. § 2342(3)(A). We must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).

## DISCUSSION

New York argues that FMCSA's final determination of substantial noncompliance should be set aside as arbitrary,

[4] FMCSA did not assert that a basis for its final determination was New York's failure to "cooperate with [FMCSA's] review and provide any information requested by the FMCSA." 49 C.F.R. § 384.307(a). Though FMCSA briefly references New York's "intransigence" as a basis for the final determination, Resp'ts Br. at 16, it conceded that it was not relying on this argument. Oral Arg. Audio Recording at 27:47–29:03.

capricious, or contrary to law. In New York's view, the plain text of the regulations did not require states to match the validity periods of non-domiciled CDLs to the expiration dates on drivers' lawful presence paperwork. Accordingly, the question we must answer is whether FMCSA's regulations, as they existed during the relevant period, contained such a requirement. To do so, we consider the "text, structure, history, and purpose" of those regulations. *McQuillin v. Hartford Life & Accident Ins. Co.*, 36 F.4th 416, 419–20 (2d Cir. 2022) (quoting *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019)).[5]

**I. Text and Structure**

We begin with the text. An expiration-matching requirement relates to the procedures that a state must follow in issuing licenses, not the requirements that an applicant must satisfy to obtain a license. Accordingly, Section 383.73—which enumerated state licensing procedures—is the proper starting point for our textual analysis.

As to non-domiciled licenses, Section 383.73 provided: "State procedures for the issuance of a non-domiciled CLP and CDL . . . must at a minimum be *identical* to those pertaining to any other CLP or CDL," with three exceptions. 49 C.F.R. § 383.73(f)(2) (emphasis added). Relevant here, one of those domiciled licensing procedures was that the state must "[m]ake the CDL valid for no more than 8 years from the date of issuance." *Id.* § 383.73(b)(9), (c)(9), (e)(7). To comply with the "identical to" command, then, states were

[5] Neither party argues that the regulations are "genuinely ambiguous." *Kisor*, 588 U.S. at 575; *see* Pet'rs Br. at 27; Resp'ts Br. at 17. When asked to confirm that FMCSA was "not invoking any form of agency deference," FMCSA stated "that is correct." Oral Arg. Audio Recording at 25:52–25:57.

required to make non-domiciled licenses valid for no more than eight years, unless one of Section 383.73(f)'s exceptions instructed otherwise. The three exceptions required the state to obtain a non-domiciled CDL issued by another state if an applicant requested a license transfer; add the word "non-domiciled" to the face of non-domiciled licenses; and establish "the practical capability" of disqualifying such licenses. *Id.* § 383.73(f)(2). None of those exceptions related to the validity periods or expiration dates of non-domiciled CDLs. And because the regulation "explicitly enumerate[d] certain exceptions" to the general requirement that issuance procedures for non-domiciled and domiciled licenses be identical, we should hesitate to imply "additional exceptions." *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980). The plain text therefore supports that the eight-year maximum validity period applied to non-domiciled licenses, giving states freedom to issue non-domiciled licenses for up to eight years.

FMCSA does not attempt a textual argument to the contrary. FMCSA conceded in its final determination, throughout its appellate briefing, and at oral argument that the plain text of the regulation does not contain a matching requirement. *See* App'x 31; Resp'ts Br. at 21 (focusing on the "broader regulatory context"); Oral Arg. Audio Recording at 24:28–24:39 ("We have never taken the position that [the text] was unambiguously clear [or] that there's only one way to read this regulation."). In the final determination, for instance, FMCSA expressly disclaimed a "literal reading" of the plain text. App'x 31 (citation modified). It instead resorted to interpreting the "intent" of its regulations, "however clear the words may appear." *Id.* (citation

modified). FMCSA's concession that a "literal" reading of the "clear" words of its own regulations supports New York's understanding should be the end of the matter. *Id.* It is well-established that "agencies should provide regulated parties fair warning of the conduct a regulation prohibits or requires," and that regulated parties are not required "to divine the agency's interpretations in advance." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156, 159 (2012) (citation modified). FMCSA expected New York to do just that.

Regardless, FMCSA's implied meaning argument fails on its own terms. FMCSA relies on Section 383.71(f), which provided that an applicant for a non-domiciled license "must provide an unexpired employment authorization document (EAD) issued by USCIS or an unexpired foreign passport accompanied by an approved I-94 form documenting the applicant's most recent admittance into the United States." 49 C.F.R. § 383.71(f)(2)(i). FMCSA argues that an expiration-matching requirement "flowed as a matter of common sense" from the fact that a non-domiciliary was required to present "unexpired" proof of lawful presence to obtain a commercial driver's license. Resp'ts Br. at 15. FMCSA contends that "any other interpretation would allow non[-]domiciled drivers unlawfully present in the United States to operate commercial motor vehicles." Resp'ts Br. at 20 (citation modified). That is wrong.

First, FMCSA's argument rests on the false premise that foreign passports and EADs prove "the duration of lawful presence[.]" Resp'ts Br. at 21. FMCSA does not explain how the expiration date of a passport issued by a foreign country relates to the duration of lawful presence in this country. And EADs reflect the duration of work authorization, not lawful presence. *See* 8 C.F.R. § 274a.12(a). Further,

because work authorization was previously subject to automatic renewal and termination, an EAD's expiration date did not even reliably predict when work authorization expired. For example, until recently, some forms of employment authorization were automatically extended for up to 540 days while a renewal application was pending. Automatic Employment Authorization Document (EAD) Extension, U.S. Citizenship & Immigr. Servs. (Oct. 29, 2025), https://perma.cc/NZJ8-8UPU. Others were automatically terminated, such as when exclusion or deportation proceedings were instituted against the noncitizen. 8 C.F.R. § 274a.14(a)(1)(ii). Accordingly, tailoring the validity periods of non-domiciled CDLs to the expiration dates on foreign passports or EADs would not have guaranteed that the driver was lawfully present for the duration of her license.

Second, FMCSA's contention that an expiration-matching requirement "flowed" from the plain text "as a matter of common sense" is unavailing. Resp'ts Br. at 15. Consider, for example, an applicant who sought to demonstrate lawful presence with an unexpired foreign passport and valid I-94 form. The I-94 form contains an Admit Until Date, which represents the date that the traveler's immigration status expires. *See* U.S. Customs & Border Prot., I-94 Expiration Dates (July 2015). If the Admit Until Date on an applicant's I-94 preceded the expiration date on her foreign passport, should a state have set her non-domiciled CDL to expire on the former or the latter date? The answer to this question flows neither from the text of the regulation nor common sense.

Third, FMCSA does not explain its logical leap from a threshold

requirement that an applicant demonstrate lawful presence to an obligation on the part of states to ensure a driver's continuous lawful presence for the duration of her license. That leap is unsupported by the text of the regulations, which required "[a]n *applicant* for a Non-domiciled CLP and CDL" to present lawful presence documentation. 49 C.F.R. § 383.71(f)(2) (emphasis added). The regulations defined "[d]river applicant" as "an individual who applies to a State or other jursidiction to obtain, transfer, upgrade, or renew a CDL[.]" *Id.* § 383.5. The term "applicant" thus implied that the lawful presence paperwork requirement was temporally limited to the application process. It follows that states were not required to ensure lawful presence paperwork remained unexpired throughout a CDL's validity period.

FMCSA's argument to the contrary rests on the requirement that a noncitizen present unexpired documentation to receive *and* to renew a CDL. FMCSA infers from that requirement that a noncitizen had to maintain valid documentation at all points between issuance and renewal. That inference is unsupported by the regulatory text, which required a state to check for proof of immigration status "only" to issue, renew, upgrade, or transfer a CDL or CLP. *Id.* § 383.73(a)(6). During the license period, it was the noncitizen who bore the burden of reporting disqualifying events, including criminal convictions or legal proceedings that might affect lawful status. *Id.* § 383.71(f)(2)(ii). By enumerating points at which a state must verify a driver's immigration status, the regulations did not require the state to do so at all other points.

In sum, the regulations contained only one requirement with

respect to validity periods: that CDLs could not remain valid for more than eight years after issuance. That requirement applied to non-domiciled and domiciled CDLs alike. FMCSA's attempt to enact an additional expiration-matching requirement out of regulatory silence falls flat. The agency's position runs afoul of fair notice principles, departs from the regulatory text, and underestimates the complexity of its supposedly "common sense" requirement. Resp'ts Br. at 15.

## II. Regulatory History

The regulatory history further confirms what is clear (or clearly absent) from the text. *Cf. United States v. Bedi*, 15 F.4th 222, 229 (2d Cir. 2021) ("Although the text is unambiguous, our conclusion is fortified by the legislative history."); *J.S. v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 76 F.4th 32, 47 (2d Cir. 2023) ("The legislative history thus offers no reason to doubt the soundness of our construction of the statute."). It reflects that FMCSA considered and declined to adopt an expiration-matching requirement for the regulation in issue.

We begin in 2008, when FMCSA proposed an eight-year maximum validity period for CDLs. *See* Commercial Driver's License Testing and Commercial Learner's Permit Standards, 73 Fed. Reg. 19282, 19288 (April 9, 2008). States commented on the proposal, and the agency addressed those comments in the 2011 final rule. Relevant here, some states suggested that the final rule incorporate by reference the REAL ID Act, which governs issuance of non-commercial driver's licenses and personal identification cards. *See* Commercial Driver's License Testing and Commercial Learner's Permit Standards, 76 Fed. Reg. 26854, 26861 (May 9, 2011). Under the

REAL ID Act, the default rule since 2008 was that states could issue licenses "for a period not to exceed eight years." 6 C.F.R. § 37.5(a). But for individuals with temporary lawful status, licenses could not be issued "[f]or a time period longer than the expiration of the applicant's authorized stay in the United States, or, if there is no expiration date, for a period longer than one year." *Id.* § 37.21(b). States like Michigan suggested that FMCSA incorporate that requirement into the final rule, such that CDLs would "expire when legal presence expires." Mich. Dep't of State, Comment Letter on Proposed Rule Entitled Commercial Driver's License Testing and Commercial Learner's Permit Standards, at 2 (July 9, 2008).

FMCSA rejected that suggestion. The agency stated that it "declin[ed] to adopt REAL ID by reference wholly or in part," but that Section 383.73 was "consistent with maximum validity periods required by REAL ID." Commercial Driver's License Testing and Commercial Learner's Permit Standards, 76 Fed. Reg. 26854, 26861 (May 9, 2011). In other words, FMCSA's regulation resembled REAL ID only with respect to the eight-year maximum validity period. Had FMCSA adopted REAL ID's expiration-matching requirement, surely it would have said so. That the agency considered and rejected a requirement that was proposed by states and expressly stated in a parallel regulatory scheme is strong evidence that no such requirement was implicit in Section 383.73.

Recent amendments to the regulations reinforce this conclusion.[6] Although the amendments took effect after the relevant

[6] We express no view as to the lawfulness of the newly enacted regulations, which are the subject of ongoing litigation.

period, they shed light on what existed before. Two amendments are particularly relevant here. First, FMCSA added a fourth exception to Section 383.73(f)'s requirement that non-domiciled CDL licensing procedures must "at a minimum be identical" to those governing domiciled licenses:

> For applicants domiciled in a foreign jurisdiction, the State must ensure that the period of validity of the non-domiciled CLP or CDL does not exceed the Admit Until Date or expiration date on the applicant's I–94/A or 1 year, whichever is sooner. In any case (including where the applicant's I–94/A contains no end date or is marked "D/S" to show it is valid for the duration of status) a State must not issue a non-domiciled CLP or CDL with a period of validity longer than 1 year.

49 C.F.R. § 383.73(f)(2)(iv) (current). Second, FMCSA amended Section 383.71 to require that a non-domiciled applicant "[h]ave lawful immigration status in the United States," and "[p]rovide evidence of lawful immigration status," 49 C.F.R. § 383.71(f)(3)(i) (current) (emphasis omitted), which is defined as an "unexpired foreign passport" and a "Form I-94 . . . with an unexpired Admit Until Date[.]" 49 C.F.R. § 383.5 (current).

Those amendments are revealing. First, they weaken FMCSA's claim that Section 383.71(f)—the lawful presence paperwork requirement—is the key provision at issue in this case. *See* Resp'ts Br. at 21. Under the amended regulations, the expiration-matching requirement is expressly stated in Section 383.73(f) as one of the exceptions to the "identical" licensing procedures requirement. That FMCSA deemed Section 383.73(f) the appropriate place to insert an

explicit expiration-matching requirement confirms that we should look to that provision to assess whether such a requirement existed before. Second, the amendments strengthen our conclusion that an expiration-matching rule was not a matter of common sense. FMCSA claims that the revised Section 383.73 merely clarified what was implicit before. *See* Oral Arg. at 21:30–21:44. But the new regulation offers extensive guidance related to I-94 forms, such as when to reference a form's Admit Until Date versus expiration date, and how states should handle a form that "contains no end date or is marked 'D/S,'" which means that a noncitizen's lawful presence lasts for the duration of her status. 49 C.F.R. 383.73(f)(2)(iv) (current). FMCSA fails to explain how states should have divined these procedures from the text of the earlier regulations.

FMCSA's regulatory history argument is weak by comparison. The agency points to post-9/11 memoranda from the Department of Transportation, which recommended that "[d]emonstrating legal presence in the United States should be a requirement to obtain a CDL" due to concerns about the "potential use of trucks in terrorist activities." FMCSA, U.S. Dep't of Transp., Report No. MH-2002-093, *Improving Testing and Licensing of Commercial Drivers*, at i, vi (May 8, 2002). Based on those sources, FMCSA argues that lawful presence is a "threshold requirement" for obtaining a non-domiciled license. Resp'ts Br. at 19. But those memoranda say nothing about the validity periods of non-domiciled licenses. And, as described above, a threshold lawful presence requirement does not imply the existence of an expiration-matching requirement. FMCSA's regulatory history arguments are therefore unavailing.

All in all, the regulatory history reflects that, before September 2025, states were not required to tailor non-domiciled CDL validity periods to the expiration dates on lawful presence paperwork. That is not only supported by the 2011 final rule and recent regulatory amendments, but by the agency's decision not to enforce an expiration-matching requirement until now. FMCSA has not pointed to a single instance before the final determination in this case when it found a state noncompliant for failing to adhere to that requirement. To be sure, "an agency's enforcement decisions are informed by a host of factors, some bearing no relation to the agency's views regarding whether a violation has occurred." *SmithKline*, 567 U.S. at 157. "But where, as here, an agency's announcement of its interpretation is preceded by a very lengthy period of conspicuous inaction," a "plausible hypothesis" is that the agency previously "did not think the . . . practice was unlawful." *Id*. at 158 (citation modified). This history of non-enforcement further undermines FMCSA's claim that an expiration-matching requirement was implicit in the regulations all along.

## CONCLUSION

This appeal raises a single question—whether FMCSA's final determination was arbitrary, capricious, or contrary to law. We conclude that it was. Although FMCSA was free to—and later did—go through the rulemaking process to enact new requirements with respect to non-domiciled CDLs, the agency could not withhold federal funding based on a state's noncompliance with a regulatory requirement that did not exist.

Because New York's noncompliance with the purported expiration-matching requirement was the sole basis for the final determination, the determination cannot stand. Accordingly, we **GRANT** New York's petition and set aside the final determination.