SCHWARTZ, *Circuit Judge*, concurring in the judgment.

The majority concludes that New York can win this case purely on the plain text of the regulations at issue. Under established precedent, that should be the end of our analysis. Nevertheless, the majority proceeds to comment gratuitously on regulatory structure and history in ways that could affect other cases. I do not believe the majority's approach is appropriate and so concur only in the judgment.

This case should be straightforward. Under the relevant regulations, the Federal Motor Carrier Safety Administration ("FMCSA") allowed States to issue commercial driver's licenses ("CDLs") to eligible noncitizens that remain "valid for no more than 8 years." 49 C.F.R. § 383.73(b)(9). To qualify for a license, noncitizens needed to provide either (1) "an unexpired employment authorization document (EAD) issued by" U.S. Citizenship and Immigration Services, or (2) "an unexpired foreign passport accompanied by an approved I-94 form documenting the applicant's most recent admittance into the United States." *Id.* § 383.71(f)(2)(i).

Until recently, the State of New York issued CDLs to noncitizens that expired five years after initial issuance and eight years after any subsequent renewals, even if the license would remain valid for longer than the applicant was authorized to work or remain in the country. In 2025, FMCSA interpreted its

regulations to require the States to match the expiration date of each nondomiciled CDL to the expiration date on the lawful status documents that the applicants provided. When New York refused to change its expiration-date policy, FMCSA determined that New York was substantially noncompliant with the federal regulations and withheld over $73 million of New York's federal-aid highway funding for the 2027 fiscal year.

On appeal, FMCSA insists its expiration-matching requirement is nothing more than "common sense." Resp. Br. at 15. There is just one problem with FMCSA's position: at every stage of this litigation, FMCSA conceded that the plain text of the regulation does not support its interpretation. *See* App'x 31 (finding that a "literal reading" of the text would "compel [the] odd result" that expiration-date matching was not required (cleaned up)); *see also id.* (looking to intent "however clear the [rule's] words may appear" (cleaned up)); Resp. Br. at 20–21 (examining the "broader regulatory context" to avoid "eviscerat[ing]" the "statutory text"); Oral Arg. Recording at 20:43–20:57 (acknowledging it was a "stretch" to imply a matching requirement into the text). These concessions were honest but fatal.

Consistent with these concessions, the plain text does not contain FMCSA's expiration-matching requirement. FMCSA's regulations specify that "[n]on-domiciled" applicants must present either "unexpired" work authorization or an "unexpired" passport and "approved" I-94 form to establish lawful status. 49 C.F.R. § 383.71(f)(2)(i). The State must "check [this] proof of citizenship or immigration status . . . only for . . . initial issuance, renewal, upgrade or transfer of a CDL or non-domiciled CDL." *Id.* § 383.73(a)(6). So once an applicant establishes citizenship or status by providing documents that were "unexpired" at the time of application, the State may issue a CDL that remains valid for up to eight years. Nothing in this text requires the States to link the license's expiration date to an applicant's lawful status.

FMCSA nevertheless urges us to interpret the regulatory text to require expiration-date matching to avoid "odd" outcomes, like noncitizens holding commercial licenses after they are no longer authorized to work or remain in the country. It is true that a regulation's plain language might not control if it leads to "absurd or impracticable consequences." *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929). Here, however, FMCSA expressly disclaimed that any "odd," "anomalous," or "irregular" results from New York's interpretation amounted to

"absurd" ones. App'x 31; Oral Arg. Recording at 29:55–30:16. Mere oddities and anomalies are not, in and of themselves, absurdities. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565 (2005) ("The omission may seem odd, but it is not absurd."); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 414 n.13 (2010) (opinion of Scalia, J.) (finding "outlier instances" and "anomalies" do "not prove [an] interpretation is absurd").

In any event, New York's longstanding policy of issuing CDLs without expiration-date matching does not meet the high bar for absurdity. *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 203 (1819) (requiring "the absurdity and injustice of applying the provision to the case, [to] be so monstrous, that all mankind would, without hesitation, unite in rejecting the application"). After all, no one argues that a state license to drive a truck, even if issued under federal regulations, can change a driver's immigration status. *See* Oral Arg. Recording at 40:26–40:31 (acknowledging a CDL "is not a proxy for the driver's lawful presence after issuance"). Other immigration laws and regulations already stop "odd" outcomes from occurring. *See, e.g.*, 8 U.S.C. § 1227(a)(1)(B) (making "[a]ny alien" illegally present "deportable"); 8 U.S.C. § 1324a(a) ("Making employment of unauthorized [noncitizens] unlawful"); 8 C.F.R. § 274a.2(b)(4)(vii) (requiring an

employer to "reverify" expired employment authorization or "the individual may no longer be employed"). To the extent that FMCSA is attempting to prevent drivers from staying or working here illegally, the CDL regulations are neither the best mechanisms nor the only ones to achieve that outcome.

The majority agrees that FMCSA's failure to advance a plausible textual argument "should be the end of the matter." *Ante* at 13. Yet the majority nevertheless pronounces on the "structure, history, and purpose" of the rules at issue in this case, as well as recent amendments to those rules and the relationship those rules have to other ones. *Ante* at 11 (quotation omitted). There is no good reason to do so. "[O]ur inquiry begins with the [regulatory] text, and ends there as well if the text is unambiguous." *United States v. Anderson*, 188 F.4th 571, 579 (2d Cir. 2026) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176 (2004)). We should not "fortif[y]" our conclusions with "legislative history" when the text is uncontested. *Ante* at 16.[1]

[1] *Accord United States v. Bedi*, 15 F.4th 222, 226 & n.24 (2d Cir. 2021) (collecting cases supporting "[w]hen the statutory text is plain and unambiguous, our sole function is to enforce it according to its terms" (citation modified)); *J.S. v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 76 F.4th 32, 38 (2d Cir. 2023) ("*If* we find the text ambiguous, we may seek guidance from the statute's legislative history." (emphasis added)).

Jumping into the regulatory history risks missteps and mischief that may create unnecessary snares for future regulatory actions or ongoing litigation. There is no legitimate reason to pronounce on regulations, like automatic work reauthorization and the "Duration of Status" visa classification, that were repealed before FMCSA issued a final determination. Nor should we tie our textual reasoning to amendments to FMCSA's regulations that face ongoing litigation in our sister circuits. I also would not "begin in 2008" with a discussion of comments accompanying a proposed amendment to the implementing regulations. *Ante* at 16.

I would begin with the text and end when it is clear and would not lead to absurd results, so I concur in the judgment only.